STATE, Respondent, vs. BUSS, Appellant.

*April 6—May 1, 1956.*

For the appellant there was a brief and oral argument by *Bernard J. Traeger* of Watertown.

For the respondent there was a brief and oral argument by *Thorpe Merriman,* district attorney of Jefferson county.

MARTIN, J.   Appellant contends that the trial court erred in limiting the cross-examination of the state's witnesses.

On direct examination the complaining witness, Geraldine Gronert, aged eighteen, testified that she met Kenneth Buss in January, 1953; that two months later she started "going steady" with him; that from April or May, 1953, until about

February, 1954, they went out together three or four times a week and usually had intercourse on those occasions; that her last menstrual period was January 11 or 12, 1954, and the child was born October 17, 1954. She was asked:

"*Q.* After the time that you started going with the defendant, Kenneth Buss, did you go with any other boy? *A.* No."

On cross-examination she was asked:

"*Q.* You stated that from the time you started to go steady with him you did not go out with any other boys? *A.* No. . . .

"*Q.* Did any boys come to see you at your home? *A.* No.
"*Q.* Did you go to see any boys at their homes? *A.* No.
"*Q.* Do you know Leon Faultersack? *A.* Yes, I know him.

"*Q.* Did you ever have a date with him during this period? *A.* No.
"Mr. Dakin: Objected to.
"The Court: Objection sustained.
"Mr. Traeger: If the Court please, this young lady testified she went with this defendant from a certain time in May until a couple of months after this child was born [sic]. Now, I want to impeach her testimony by showing that she went with others.
"The Court: You have a right to impeach her testimony, but only with respect to any testimony she has given that is material. If you want to ask that kind of question, fix the date.
"Mr. Traeger: I think it is material from this standpoint: The plaintiff has tried to show the jury that there was an affair between these two lasting over many months, and that she was his regular girl friend. And we want to refute that idea. It is important to the jury to know whether this was a single—
"Mr. Dakin: We object to counsel making these statements in the presence of the jury, testifying.
"The Court: Objection sustained.
"Mr. Dakin: There is only one material element, who is the father of this child.

"Mr. Traeger: No.

"The Court: Mr. Traeger, the Court has ruled; the objection is sustained.

"*Q.* Did you ever have intercourse with Leon Faultersack—

"Mr. Dakin: Just a minute, now;—

"*Q.* —during the month of January, 1954? *A.* No.

"*Q.* Did you keep company with him during that month? *A.* With whom?

"*Q.* With Leon Faultersack? *A.* No."

On direct examination Alice May Gronert, sister of the complaining witness, was asked with respect to the entire period that Geraldine and Kenneth were going together:

"*Q.* And during this time was your sister keeping company with any other man or boy? *A.* No."

On cross-examination defense counsel asked her:

"*Q.* You stated that your sister kept company with no other man or boy? *A.* No. . . .

"*Q.* Didn't she keep company with Donald Rabadeau during that period? *A.* No.

"Mr. Merriman: I want to object to these questions, unless they are very specifically stated as to when.

"The Court: You should limit your inquiry.

"Mr. Traeger: In the opening statement the district attorney stated that he was going to show that they had an exclusive courtship from May up until after this pregnancy. Now, the complaining witness has testified that he was her exclusive boy friend during that time. Now this witness has so testified. I think in view of all of this testimony and the opening statement, we should be allowed to show otherwise.

"Mr. Dakin: Just a minute.

"The Court: Proceed, Mr. Traeger; the Court has ruled. You know what the rule is."

Mrs. Leona Eggert, mother of Geraldine, testified as follows on direct examination:

"*Q.* During the period from, we will say March or April, 1953, down to until after your daughter became pregnant,

whom was she keeping company with? *A.* You mean whom she was going with?

"*Q.* Whom she was going with.

"Mr. Traeger: I object to the question.

"Mr. Dakin: We will make it more specific in the next question.

"Mr. Traeger: I am in the precise—I move that the prosecution not be allowed to go into whom she kept company with until the period when she became pregnant.

"The Court: Objection overruled.

"*Q.* With whom did she keep company during that period, after about April, 1953, or March, down until, we will say September, 1954? *A.* She was going with Kenneth Buss.

"*Q.* Was she keeping company with any other man? *A.* No.

"Mr. Traeger: Object to that question. If we are not allowed to disprove it, he should not be allowed to put evidence in to that effect.

"The Court: The answer may stand."

It is an elementary rule of law that the scope of cross-examination is to be restricted to the matters about which the witness was examined on direct, "subject to the latitude allowed for the purpose of testing his intelligence, memory, credibility, and fairness." *Knapp v. Schneider* (1869), 24 Wis. 70, 71. See cases cited in 17 Callaghan's Wis. Dig., Witnesses, p. 474, sec. 187 *et seq.*

As stated in 58 Am. Jur., Witnesses, p. 350, sec. 629:

"Of course, it is error for the trial court to refuse to permit the cross-examination of a witness to extend to all matters germane to the direct examination, for such a cross-examination is a matter of absolute right and is not a mere privilege; but under the majority American rule a witness may not be asked any question on cross-examination which does not tend to rebut, impeach, modify, or explain any of his testimony. And so, where a witness testifies on the examination in chief regarding a particular fact, he may not be cross-examined in regard to the case generally; he may not be cross-examined as to other matters except such as limit,

qualify, or explain the fact testified to. If a party wishes to examine a witness as to matters not stated in his direct examination, he should make the witness his own, and call him as such in the subsequent progress of the case." See also 70 C. J., Witnesses, pp. 621, 666, secs. 793, 826.

Respondent argues that evidence as to the complaining witness' associations with other men (or the lack of such associations) during any period other than that during which the child could have been conceived would be immaterial. Apparently it took a different view on the trial when it elicited from Geraldine, her sister, and her mother testimony as to her exclusive association with the appellant for the nine or ten months prior to conception. In any event, by doing so, it opened the door to cross-examination on that subject. Obviously, it would be immaterial on the issue of parentage, but it would bear substantially upon the question of the witnesses' credibility. To deny such cross-examination was error prejudicial to the appellant, especially since in a case of this kind the prosecution must stand or fall on the credibility of the complaining witness.

Respondent cites a number of cases where it was held not error to exclude certain evidence on cross-examination. In none of these cases, however, was the ruling applied to matters elicited from the complaining witness on the examination in chief; in none of them had the prosecution opened the door, as it did here.

Appellant further contends that the trial court should have granted his motion for a new trial on the ground of newly discovered evidence. While we are inclined to agree, it is unnecessary to discuss the question since we have determined that a new trial must be had for the reasons stated above.

*By the Court.*—Order and judgment reversed, and cause remanded for a new trial.

FAIRCHILD, C. J., took no part.