BERG, Plaintiff in error, v. STATE, Defendant in error.

*No. State 50. Argued February 7, 1969.—Decided March 4, 1969.*
(Also reported in 165 N. W. 2d 189.)

730

734

For the plaintiff in error there were briefs and oral argument by *James H. McDermott,* state public defender.

For the defendant in error the cause was argued by *Harold B. Jackson, Jr.,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

HEFFERNAN, J. On this appeal the defendant contends that the uncontroverted testimony that the assailant of the prosecutrix had no erection during the incident in

question establishes that such assailant had no intent to "perform acts and attain a result which, if accomplished, would constitute [the crime of rape]." We are satisfied that this defense is without merit. Although it is apparent that the inability of an assailant to achieve an erection is a defense to the crime of rape, it is not a defense to the charge of attempted rape. 1 Wharton's, *Criminal Law and Procedure*, p. 652, sec. 314, points out, "A man who is impotent cannot be guilty of rape as a principal in the first degree, although he may be guilty of an attempt to commit rape . . . ." 26 A. L. R. Anno. 769 refers to numerous cases holding that the general rule is that impotency whether the result of youth, age, or infirmity is not a defense to an assault with intent to rape, although evidence of impotency is admissible as being relevant to the intent with which an assault is made. These cases turn on the point that the mere failure to achieve an erection or to accomplish penetration is not controlling when there is other evidence probative of the intent to commit rape. These cases are declaratory of the same legal policy that is found in our general attempt statute, sec. 939.32 (2), Stats. (1965), which provides:

"An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor."

This statute was construed in *State v. Damms* (1960), 9 Wis. 2d 183, 100 N. W. 2d 592. In that case this court sustained a conviction of a defendant who claimed that he could not have been found guilty of attempted murder when the pistol that he placed at his wife's head was unbeknownst to him not loaded. Relying upon the provisions of the attempt statute quoted above, this court con-

cluded that the impossibility of accomplishing the shooting, due to the gun being unloaded, fell within the statutory words, "except for the intervention of . . . some other extraneous factor." In discussing the policy of that statute, this court quoted an article by Assistant Attorney General William Platz appearing in the 1956 Wisconsin Law Review at page 364:

" 'Emphasis upon the dangerous propensities of the actor as shown by his conduct, rather than upon how close he came to succeeding, is more appropriate to the purposes of the criminal law to protect society and reform offenders or render them temporarily harmless.' " *State v. Damms, supra,* page 188.

In *Damms, supra,* page 191, this court stated:

"An unequivocal act accompanied by intent should be sufficient to constitute a criminal attempt. Insofar as the actor knows, he has done everything necessary to insure the commission of the crime intended, and he should not escape punishment because of the fortuitous circumstance that by reason of some fact unknown to him it was impossible to effectuate the intended result."

We consider that statement apposite to the instant case. In the event that the defendant took the position that the assailant of Marcy Ann was chronically impotent and it was either physically or psychologically impossible for him to achieve an erection and, hence, the accomplishment of sexual intercourse, this inability might be highly probative of the fact that one in such a situation would be most unlikely to attempt rape. The argument urging chronic impotency as a defense is not available to the defendant herein, for he steadfastly maintains that he was not the assailant. He relies upon the bald proposition that one who is unable to achieve an erection cannot form the intent requisite to commit the crime of attempted rape. The uncontradicted evidence of the assailant's conduct, his brutal physical attack, the choking of the prosecutrix until she partially disrobed, and his at-

tempt to penetrate her are unequivocal evidence that his purpose was carnal copulation by force and without consent. His conduct was consistent with this purpose and with the expectation that such result would be achieved. There is no evidence whatsoever which leads us to conclude that the assailant's physical inability to achieve penetration was anything other than completely unexpected and unknown to him until the attack took place. Under these circumstances, the physical impotency of the defendant was an intervening extraneous factor which prevented the commission of the crime. It was, under the circumstances, a fortuitous event. Where, as here, the accused has done everything necessary to accomplish his objective of raping his victim, he may not escape punishment merely because of his unexpected idiopathic inability to achieve that result.

The principal defense asserted at trial was alibi. A friend, James Sercombe, testified that he was continuously with the defendant from before noon on the day of the attempted rape until late in the day. Sercombe's alibi evidence was corroborated by the testimony of a Beverly Beaudoin, who stated that she had been with the defendant from sometime on the morning of November 19th until at least late in the afternoon, well after the time of the alleged offense. There was additional corroboration of these two witnesses by the testimony of the parking attendant at the Marine National Exchange Bank, who stated that he saw Sercombe, another young man, and Beverly Beaudoin in the Marine parking ramp, some distance from the scene of the crime, at or about the same time that the attack was made. A filling station attendant also testified that early in the afternoon he had seen Berg in the company of Sercombe. A teller verified Sercombe's story that he had been in the bank shortly after noon to make a car payment.

The defendant asserts that his alibi is a credible one and should have produced a reasonable doubt in the

minds of the jurors that the attacker of Marcy Ann was Glenn Berg. It is true that the alibi evidence was strong and could have been believed. However, as this court has repeatedly stated, "Testimony supporting an alibi does not raise a reasonable doubt as a matter of law." *State v. Grahn* (1963), 21 Wis. 2d 49, 52, 123 N. W. 2d 510. The credibility of a witness to an alibi defense is to be measured by the same test that we apply to other witnesses. The credibility and the weight to be given to the testimony of such witnesses is strictly a function of the jury. *State v. Clarke* (1967), 36 Wis. 2d 263, 277, 153 N. W. 2d 61. In the instant case the jury was within its province to believe the positive identification of the prosecutrix and to disbelieve the testimony of Berg's witnesses.

The defendant also argues on this appeal that the trial judge committed prejudicial error in excluding additional testimony which would have materially strengthened the alibi defense. He testified that, while at the Marine Bank and at or about the time that the assault took place, he attempted to cash a payroll check. It was the defendant's testimony that he asked one of the tellers to cash his check. Berg said that she responded that she would be unable to do so because he did not have an account at the bank. He testified that he told her that he usually cashed his check at a grocery store.

Jeanne Roeglin, a teller at Marine Bank, was called to the stand to corroborate the defendant's testimony. In response to the question by defense attorney, "Do you recall talking to the Defendant on that date?", Jeanne Roeglin answered, "No, I cannot identify him as being the person." Defense counsel then attempted to ask whether she recalled refusing to cash a check on that date for a man who had stated that he usually cashed his checks at a grocery store. The trial judge sustained the district attorney's objection to this question. Outside of the presence of the jury, the defendant then made the following offer of proof:

"*Q.* Do you recall on that day speaking to somebody— speaking to a male who indicated to you that he cashed his checks at grocery stores? *A.* Yes.

" . . .

"*Q.* . . . Do you recall whether or not you spoke to someone about cashing a check, and for whom you refused to cash a check?

" . . .

"*A.* Oh, yes.

" . . .

"*Q.* Do you recall seeing the defendant there on that date, November 19th of 1965? *A.* No, I can't—."

The trial judge again sustained the objection to this testimony. It is contended on appeal that this testimony was admissible; and since it would have materially strengthened the alibi defense, the error in excluding it was prejudicial. The state contends that the evidence offered was not relevant and hence inadmissible. We agree with the defendant that this evidence was admissible. It was corroborative of a portion of the defendant's alibi testimony. In *Oseman v. State* (1966), 32 Wis. 2d 523, 526, 145 N. W. 2d 766, this court stated, quoting with approval from 1 Wharton's, Anderson, *Criminal Evidence* (12th ed.), pp. 284–287, sec. 148:

" 'Evidence is relevant when it is persuasive or indicative that a fact in controversy did or did not exist because the conclusion in question may be logically inferred from the evidence. The criterion of relevancy is whether or not the evidence adduced tends to cast any light upon the subject of the inquiry. Evidence of any fact is admissible as relevant which might establish the hypothesis of innocence, or show the defendant's guilt. Any evidence that assists in getting at the truth of the issue is relevant; in other words, *any fact which tends to prove a material issue is relevant, even though it is only a link in the chain of facts which must be proved to make the proposition at issue appear more or less probable. Relevancy is not determined by resemblance to, but by the connection with, other facts.*' (Emphasis supplied.)"

Using this test, the evidence was relevant and admissible, since, if believed, it tended to corroborate a portion of the defendant's alibi testimony.

The state argues that, even though admissible, it was nevertheless within the discretion of the trial judge to exclude it if he found that its probative value was outweighed by risks incident to its admission. While this is a correct rule of law and one adopted by this court, it is not applicable to this case.

This court in *Whitty v. State* (1967), 34 Wis. 2d 278, 294, 149 N. W. 2d 557, adopted Rule 303 of the American Law Institute's Model Code of Evidence. That rule permits the trial court in the exercise of its discretion to exclude otherwise admissible evidence if the introduction of such evidence would:

"(a) necessitate undue consumption of time, or
"(b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or
"(c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered."

None of these grounds for exclusion were present in the instant case. Moreover, as this court stated in *State v. Hutnik* (1968), 39 Wis. 2d 754, 764, 159 N. W. 2d 733:

"Rule 303 is implicit in its requirement that the judge 'find' that the probative value of otherwise admissible evidence is outweighed by risks that would result if the evidence is not excluded."

No finding was made in this case to show the exercise of discretion by the trial judge, and it is apparent that such discretion could not, properly, have been exercised in view of the guidelines of Rule 303. It was therefore error to exclude the testimony embodied in the defendant's offer of proof. Such error was, however, not prejudicial in light of the entire record. In *Ray v. State* (1967), 33 Wis. 2d 685, 689, 148 N. W. 2d 31, and in *State v. Esser* (1962), 16 Wis. 2d 567, 599, 115 N. W. 2d 505, we followed the rule previously stated by this court:

" 'Errors committed in the course of a trial will not operate to disturb a judgment on appeal unless it appears pretty clearly that had they not occurred, the result might probably have been more favorable to the party complaining.' "

We cannot conclude that the admission of this evidence would probably have resulted in a different verdict. The testimony of record of the parking attendant at the Marine Bank, of the service station attendant, of Beverly Beaudoin, and of James Sercombe was corroborative of the defendant's alibi; and it is highly improbable that the testimony of Jeanne Roeglin, which carried with it the statement that she could not identify the defendant, would have caused the jury to reach a different result.

The defendant also contends that it was prejudicial error to admit the torn blouse and brassiere of Marcy Ann into evidence subsequent to her testimony that the assailant, before leaving the laundry room, ripped off her blouse, grabbed the top of her brassiere, pulled it down, and then squeezed her breast. No objection was made to that testimony. The defendant did, however, object to the admission of the exhibits. The state contends that they were admissible as a part of the *res gestae*. It is the defendant's position that they were inadmissible because, at the time of the clothes ripping, the attempted rape, if there were one, had already been committed, and the admission of the real evidence gave the jury no assistance in solving any material issue in the case but served solely "to inflame the minds or emotions of the jury, or to arouse pity or resentment."

Strictly speaking, the doctrine of *res gestae* is applicable not to an autoptic proference but only to testimonial evidence. It is an exception to the hearsay rule, which permits the admission of a statement into evidence when the declarant is not available for cross-examination. In *State v. Smith* (1967), 36 Wis. 2d 584, 593, 594, 153 N. W. 2d 538, we accepted the principles embodied in Rule 512

of the Model Code of Evidence.[1] It is clear that this rule is not applicable to real evidence. We have, however, consistently admitted real evidence that was corroborative of oral testimony or which throws light upon the problem before the jury. This is not the hearsay exception of *res gestae,* but it is a principle which permits the introduction of evidence closely connected in point of time with the facts or conduct at issue. In *State v. Dunn* (1960), 10 Wis. 2d 447, 103 N. W. 2d 36, two pieces of wire, a dome bulb, and a light fixture of an automobile in which a crime was attempted were admitted into evidence although the court pointed out they had little probative value. In upholding the admissibility of such evidence, this court stated, at pages 465, 466, quoting from 20 Am. Jur., *Evidence,* page 261, sec. 273:

"The modern doctrine is extremely liberal in the admission of any circumstances which may throw light upon the matter being investigated; great latitude must be given the state in the production of its evidence in proof of criminal charges. Much, of course, is left to the discretion of the trial judge, but where the proper determination of a fact depends upon circumstantial evidence, the safe practical rule to follow is that in no case is evidence to be excluded of facts or circumstances connected with the principal transaction from which an inference can be reasonably drawn as to the truth of a disputed fact. All facts tending to elucidate the matter under discussion which are referable to the point in issue tend to exhibit the *res gestae* or to establish a chain of circumstantial evidence in respect of the act charged. It is necessary only that they tend to prove the issue or constitute a link in the chain of evidence. Evidence of circumstances which tend to connect the accused with

[1] " 'Evidence of a hearsay statement is admissible if the judge finds that the hearsay statement was made (a) while the declarant was perceiving the event or condition which the statement narrates or describes or explains, or immediately thereafter; or (b) while the declarant was under the stress of a nervous excitement caused by his perception of the event or condition which the statement narrates or describes or explains.' "

the commission of a crime is properly admitted, even though inconclusive in character. Such evidence is competent to establish many varying facts. Circumstantial evidence may alone be available in proving elements of crime, such as malice, intent, or motive, which exist only in the mind of the perpetrator of the deed.' "

It is apparent that the torn brassiere and torn blouse were the result of conduct closely connected in time and place with the attempted rape and it might reasonably have appeared to the jury that this new assault was but a prelude to a continued attack for the purpose of raping the prosecutrix. Under this view, they were admissible to corroborate the testimony of the prosecutrix and evidence of the nature of the attack. They were cumulative to the oral testimony presented, but having some probative value, they were admissible unless they were of an inflammatory nature. While it would have been within the discretion of the judge to exclude such admissible evidence (*see* Rule 303(b), Model Code of Evidence, *supra*), there is nothing intrinsic to the nature of these exhibits that was shocking or revolting. We see no abuse of discretion in admitting these exhibits. They were merely other evidence of facts already before the jury, and while they could have been excluded as being cumulative or their introduction unduly time consumptive, their admission was not error.

The verdict and judgment are also attacked on the ground that the evidence was insufficient to establish the defendant's guilt beyond a reasonable doubt. On review of the sufficiency of the evidence, the standard which this court applies is whether the evidence adduced, believed, and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt. The test is not whether this court is convinced of the defendant's guilt beyond a reasonable doubt but whether the trier of facts, acting reasonably, could be convinced to the required degree of certitude. *Gauthier v. State* (1965), 28 Wis. 2d 412, 416, 137 N. W. 2d 101.

In *Oakley v. State* (1964), 22 Wis. 2d 298, 306, 125 N. W. 2d 657, this court has set forth the requirements for conviction of the crime of attempted rape:

"(1) The male must have the intent to act so as to have intercourse with the female by overcoming or preventing her utmost resistance by physical violence, or overcoming her will to resist by the use of threats of imminent physical violence likely to cause great bodily harm; (2) the male must act toward the commission of the rape by overt acts which demonstrate unequivocally, under all the circumstances, that he formed the intent to rape and would have committed the rape except for the intervention of another person or some other extraneous factor."

The discussion above shows the unequivocal purpose of the defendant in attacking the prosecutrix. His purpose was rape.

The facts set forth above make it clear that the defendant's argument that the prosecutrix failed to show "utmost resistance" or "will to resist" is without support in the testimony. She was a small girl, weighing little more than one hundred pounds and only slightly taller than five feet in height. She was struck violently in the stomach, she was throttled, and her attacker threatened to kill her. It is apparent that her will to resist could well have been overborne by her assailant's threats of imminent physical violence and by the violence in fact that accompanied these threats. However, it is absolutely undisputed that the victim never ceased her struggle with her assailant.

While the prosecutrix's description of her assailant was imprecise and disagreed with other testimony of the defendant's appearance on the day of the crime, her courtroom identification of the defendant was unequivocal; and in view of the opportunity that she had to see the defendant in a lighted room at the time of the attack, a jury could conclude beyond a reasonable doubt that her identification of the defendant was sufficient. We point-

ed out in *State v. Harris* (1968), 40 Wis. 2d 200, 207, 161 N. W. 2d 385, that the credibility of identification testimony is for the jury.

Objection is also made to the alleged error of the defense trial counsel who, in cross-examination of the prosecutrix, asked, "Now isn't it correct that during this entire time that you've claimed the Defendant was there, that he never had an erection?" Counsel on this appeal contends that from this statement the jurors must have concluded that the defendant's trial counsel possessed such knowledge only because he had it from the prosecutrix's assailant and that the jurors must have concluded that the defendant and the assailant were therefore one and the same. It is apparent from a review of the record that this information came from the testimony of the prosecutrix at the preliminary examination. On the basis of this alleged error of defendant's counsel, a new trial is asked for in the interest of justice. We do not conceive of this question as an error. True, it was fraught with some risk, but without the elicitation of this testimony the defendant would have been bereft of his principal defense, *i.e.*, that rape could not be attempted by one who was then impotent. While the information could perhaps have been more artfully elicited, the trial at all steps bears the imprint of a competent and conscientious counsel. We see no prejudice to the defendant in this respect that warrants a new trial.

Other errors are also alleged which defendant claims require a new trial. Principal among these is prosecutorial misconduct in that the district attorney stated he would produce four additional rebuttal witnesses when he in fact produced only one. The defendant would have us conclude that this statement left the inference with the jury that these witnesses would damage the credibility of the defendant's alibi. The one witness called did in fact state facts inconsistent with a portion of the alibi defense. We see no evidence of record that the

conduct of the prosecutor did mislead the jury or was intended to do so. The jury was properly instructed, and there can be no inference drawn from the record that the jury verdict was based on other than the evidence presented in court.

For the defendant to prevail in his contention in regard to any of these alleged errors or in respect to these errors when considered together, it would be necessary for this court to conclude that, had the alleged errors not been committed or the alleged misconduct not occurred, the defendant would probably have been acquitted. Viewing the evidence in its totality, such a result would be highly unlikely. We stated in *Commodore v. State* (1967), 33 Wis. 2d 373, 383, 147 N. W. 2d 283, the standard to be applied in determining whether to order a new trial in the interest of justice. We said:

"This power is exercised with 'some reluctance and with great caution' and only in the event of a probable miscarriage of justice. *Ferry v. State* (1954), 266 Wis. 508, 511, 63 N. W. (2d) 741. Such grave doubt must exist regarding a defendant's guilt to induce the belief that justice has miscarried. *State v. Fricke* (1934), 215 Wis. 661, 667, 255 N. W. 724. In *Lock v. State* (1966), 31 Wis. (2d) 110, 118, 142 N. W. (2d) 183, we stated:

" 'In order for this court to exercise its discretion and for such a probability [of a miscarriage of justice] to exist we would at least have to be convinced that the defendant should not have been found guilty and that justice demands the defendant be given another trial.' "

Applying this standard, there is no reason to believe that the defendant would be likely to be acquitted in a new trial.

*By the Court.*—Judgment affirmed.