MILLER, Plaintiff in error, v. STATE, Defendant in error.

*No. State 116.  Argued December 1, 1971.——Decided January 4, 1972.*
(Also reported in 192 N. W. 2d 921.)

For the plaintiff in error there was a brief and oral argument by *Raymond L. Hoel* of Cornell.

For the defendant in error there was a brief by *Robert W. Warren,* attorney general, and *E. Gordon Young,* assistant attorney general; the cause was argued by *Priscilla R. MacDougall,* assistant attorney general.

CONNOR T. HANSEN, J. The issues presented on this review all relate to the exclusion by the trial court of testimonial evidence relating to a purported agreement to commit an act of prostitution by the victim of the alleged armed robbery and the female who was accompanying him at the time of the alleged offense.

On the evening of November 1, 1969, complainant, Lee Kennedy, was a patron at Glenn's bar in Bloomer, Wisconsin. Also present, among other persons, were: Barbara Orchard, employed at the bar as a professional dancer; the defendant, Harold Miller, who was voluntarily performing services as a bouncer; James Martinek, one of the bartenders; and Nancy Miller (Sokup), a patron and a part-time dancer. At approximately 1:30 a. m., Kennedy and Orchard left by the rear exit, got into Kennedy's pickup truck and proceeded north out of town on Highway 53. Kennedy testified they were just going out for a ride.

The defendant, Martinek and Miller followed in an automobile. A short distance from town they forced Kennedy's truck to the side of the road but Kennedy was able to get around the automobile and continue

driving. Either at this point, or after a repeat of this occurrence, defendant jumped on the truck and began pounding on the rear window of the cab. Kennedy turned west onto Highway 64 and came to a stop on the south side of the road approximately 150–200 feet from the intersection. Although Kennedy testified he was forced off the road at this point by the automobile, it appears from the testimony of the other witnesses that he stopped at the insistence of the defendant. The testimony is in conflict as to what transpired next.

Kennedy testified that after stopping he rolled down the window on the driver's side and defendant put his arm through the open window with a knife in hand. A brief struggle ensued during which Kennedy was cut on the face and hand. Defendant then held the knife to Kennedy's throat and demanded his money; whereupon, Kennedy removed more than $2,000 from his pocketbook and handed it to the defendant. Defendant then walked around to the other side of the truck, opened the door and Orchard got out. Defendant and Orchard spoke briefly, after which she got back into the truck; defendant got back into the automobile; and the parties drove off. Kennedy and Orchard returned to town where Kennedy reported the incident to the police.

Orchard testified that she and Kennedy were going to meet some people for breakfast; that the automobile had twice forced their truck to the side of the road; and that after the second time this occurred, defendant jumped onto the truck, put his arm through the open window and began struggling with Kennedy as the truck turned west onto Highway 64. Kennedy then stopped the truck and opened the door. Defendant asked her to get out of the truck, but she declined to do so. Defendant then demanded Kennedy's money; whereupon, Kennedy handed it to him, stating that he did not

want to be hurt anymore. She observed that Kennedy had been cut prior to the time he gave the money to defendant, and that she had been splattered with blood. After the defendant had received the money from Kennedy, he told her to get out of the truck, stating, "I have a knife in the old man's throat." At no time did she observe the knife at Kennedy's throat, although she testified she was not in a position to make such an observation. She then got out of the truck and spoke briefly with defendant. He said he did not want her with Kennedy and asked her to leave. She refused and got back into the truck.

Defendant testified that after the truck had stopped, Kennedy opened the door and said, "Don't hurt me, I'll give you my money." He replied, more than once, "I don't want your money," but said he wanted to talk to Orchard. Kennedy kept offering him money and finally placed it in his hand. He refused to accept it and threw it on the ground. He then walked around to the other side of the truck, and Orchard got out. Defendant told her, "You don't have to go now, you can come back with me. Let's go." She replied, "I think I'll go with him." He replied, "Do what you want . . . You asked me to come here, it's up to you." He then kissed her and walked off. After the truck drove off, he picked up the money and returned to the automobile. On cross-examination, defendant testified that he gave part of the money to Martinek and Miller and threw the knife out the window. He denied demanding Kennedy's money or of holding a knife at his throat after the truck was stopped. He wasn't sure whether or not he had cut him but admitted the possibility that he had done so. He further testified he intended to return the money to Kennedy.

The testimony of Martinek and Miller, for the most part, corroborated the testimony of the defendant.

Martinek testified that defendant told him Orchard did not want to go out with Kennedy. There was no statement by the defendant that he was going to get money. When the defendant returned to the car with $2,280 he said that Kennedy either handed it to him or threw it on the ground. The money was then divided up between the defendant, himself and Miller. Martinek further testified that the defendant never said that he used the knife to get the money or that he had cut Kennedy.

Miller testified that defendant had told her and Martinek that he was going after Kennedy to get Orchard away from him. Earlier that evening in Orchard's dressing room, Orchard told defendant and her that she did not want to go out with Kennedy and asked the defendant to help her. When defendant returned to the automobile, she observed blood on his hands. She further testified that defendant admitted cutting Kennedy.

Orchard admitted to a conversation that evening in her dressing room with Miller and the defendant. However, she testified there was nothing said concerning Kennedy; the defendant had simply asked her out and she had declined.

The knife was recovered and received into evidence. Also received into evidence were two color photographs of Kennedy exhibiting the cuts on his hand and face, and two $100 bills containing blood, which represented part of the money recovered by the sheriff from Martinek. It was stipulated that the blood on at least one of the bills was of the same type as that of Kennedy.

Several times during the course of trial, defense counsel attempted to elicit testimony to show that Kennedy had paid money for the services of Orchard as a prostitute; that defendant was told of this alleged arrangement; and that he was asked by Orchard to help her and

to stop it if he could. On each attempt the trial court sustained objections to the admission of such testimony.

Defendant contends the trial court erred in refusing to permit inquiry into the relationship between Kennedy and Orchard on the night in question. It is argued that such evidence was admissible insofar as it affected the credibility of the state's witnesses, tended to explain the circumstances surrounding the incident and corroborated defendant's explanation of his conduct.

On cross-examination of Kennedy, following the witness' statement that he had taken Orchard for a ride before, defense counsel asked if he ever paid money to take her out of the bar. The court sustained the objection to the question on the grounds of immateriality. Defense counsel argued that defendant's story was going to be that Kennedy paid Orchard, defendant's girl friend, to leave with him that night for purposes of prostitution and that defendant was not after the money but was there to rescue Orchard. He also argued that the question went to the character and credibility of Kennedy as a witness. Later, defense counsel renewed his objection to being prevented, on cross-examination, from asking Kennedy "whether or not he was paying this girl for an act of prostitution." The court ruled that it was immaterial at that particular point in the trial because defense counsel had not shown Orchard was the defendant's girl friend and had not shown any relevancy between an alleged payment for the services of Orchard and the crime charged. After further testimony, the witness was asked, "How did you happen to leave the bar with the go-go girl?" The question was objected to as immaterial. The court sustained the objection as to relevancy and also remarked that the substance of the question could have a great prejudicial effect on the jury. The court made it clear that it was exercising its discretion in limiting cross-examination pursuant to

the rule of *Boller v. Cofrances* (1969), 42 Wis. 2d 170, 166 N. W. 2d 129.

On cross-examination of Orchard, defense counsel asked if she had any other purpose in going with Kennedy other than going to breakfast. An objection to the question was sustained on the grounds of immateriality. Defense counsel offered to show that such an inquiry would corroborate what defendant would later testify to and it would be material in impeachment of the witness' testimony.

On direct examination of the defendant, defense counsel asked about any conversations he had with Orchard on the evening of November 1, 1969. The state objected to any testimony of what Orchard might have told him. In chambers, defense counsel stated he was offering the statement solely for the purpose of showing the effect it had upon the defendant, citing *Woodhull v. State* (1969), 43 Wis. 2d 202, 168 N. W. 2d 281. Defense counsel then made the following offer of proof:

> "*The defendant:* She told me that Mr. Kennedy had paid $200 for her all night and that she did not want to go. She wanted me to stop it if I could.
> "[*Defense counsel*]: And then my next question would be: What did you do then?
> "*The defendant:* I told her I'd try to stop it. Before we left the bar, I told her to stay with me and Jim because there ain't nothing nobody could do if she stayed by us.
> "[*Defense counsel*]: Did you indicate to her you were mad about the idea of her going with Kennedy?
> "*The defendant:* I was confused and I told her she didn't have to go. I said, 'If you don't want to go, don't, nobody is going to make you.'"

The objection was sustained on the grounds of hearsay, immateriality, remoteness, and that it was self-serving.

Later, defense counsel asked the defendant whether or not Orchard had made any request of him that evening

in her dressing room. The objection was sustained on the same grounds and again an offer of proof was made outside the presence of the jury:

*"The defendant:* She told me she didn't want to go out with Mr. Kennedy and that if I could, stop it.

*"[Defense counsel]* : What did you say to her?

*"The defendant:* I said, 'I promise you I'll do what I can.' "

Objection was again sustained upon the same grounds as previously stated.

Defense counsel made one last attempt to offer testimony concerning the relationship between Kennedy and Orchard. The trial court stated it was willing to allow defense counsel to question Kennedy as an adverse witness. However, the court forbade any attempted inquiry into whether or not Kennedy had paid money on this or any prior occasion to have Orchard come with him for purposes of prostitution.

It is apparent the primary objection to the attempted inquiry is that the evidence was not material to the matter in controversy. It is, therefore, necessary to determine (1) whether the evidence was material or relevant, (2) if relevant for any purpose, whether the trial court abused its discretion in excluding the evidence, and (3) whether the exclusion thereof constituted reversible error.

As to the distinction between materiality and relevancy, McCormick states:

"In the courtroom the terms relevancy and materiality are often used interchangeably, but materiality in its more precise meaning looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to prove a proposition which is not a matter in issue nor probative of a matter in issue, the evidence is properly said to be immaterial. . . .

". . . Relevancy, in legal usage, embraces this test and something more. Relevancy in logic is the tendency of

evidence to establish a proposition which it is offered to prove. . . ." McCormick, *Evidence* (hornbook series), p. 315, sec. 152.

In *Zebrowski v. State* (1971), 50 Wis. 2d 715, 724, 725, 185 N. W. 2d 545, this court cited *Oseman v. State* (1966), 32 Wis. 2d 523, 526, 145 N. W. 2d 766, and *Berg v. State* (1969), 41 Wis. 2d 729, 739, 165 N. W. 2d 189, and again quoted with approval from 1 Wharton's Anderson, *Criminal Evidence* (12th ed.), pp. 284–287, sec. 148:

" 'Evidence is relevant when it is persuasive or indicative that a fact in controversy did or did not exist because the conclusion in question may be logically inferred from the evidence. The criterion of relevancy is whether or not the evidence adduced tends to cast any light upon the subject of the inquiry. Evidence of any fact is admissible as relevant which might establish the hypothesis of innocence, or show the defendant's guilt. Any evidence that assists in getting at the truth of the issue is relevant; in other words, any fact which tends to prove a material issue is relevant, even though it is only a link in the chain of facts which must be proved to make the proposition at issue appear more or less probable. As a starting point, all facts affording a reasonable inference as to either innocence or guilt are relevant and admissible. To be relevant, it is not necessary that the evidence be conclusive as to guilt or innocence; and it is sufficient that it tend to convince that the fact sought to be established is so. Relevancy is not determined by resemblance to, but by the connection with, other facts.' "

The material issue in the present case is whether or not the defendant possessed the intent to steal money from Kennedy while armed with a dangerous weapon. It is defendant's contention that unless the jury knew the circumstances of the alleged prostitution it would be impossible for them to believe that Kennedy was scared and voluntarily handed his money to the defendant without a demand therefor. We do not agree. Defendant's

alleged motive of rescuing Orchard because she and Kennedy were involved in an alleged illicit relationship would neither preclude nor absolve the defendant from forming an intent to commit armed robbery. We, therefore, conclude the proffered evidence that Kennedy may have paid money for the services of Orchard is immaterial to the defendant's explanation of his conduct, *i.e.*, that his motive was to rescue Orchard and not to rob Kennedy.

Defendant next contends that he should have been allowed to inquire about the relationship of Kennedy and Orchard for impeachment purposes. It is argued that the inquiry was not collateral in view of Kennedy's testimony on direct examination that he and Orchard were just going for a ride. Orchard subsequently testified that they were going out for breakfast. Furthermore, argues defendant, in *State v. Buss* (1956), 273 Wis. 134, 76 N. W. 2d 541, it was held error to restrict cross-examination on a subject inquired about on direct examination, even though it was not material to the issue being litigated. Such an inquiry, the court stated, bears substantially on the credibility of the witness. In that case, however, the court pointed out that the major factor in the determination of guilt or innocence was dependent upon the credibility of a sole witness. Such is not the situation in the instant case.

Generally, a witness may not be impeached on collateral matters. What constitutes a collateral matter depends on the issues of the particular case and the substance, rather than the form, of the questions asked on direct examination. *Tobar v. State* (1966), 32 Wis. 2d 398, 145 N. W. 2d 782. Even where evidence is relevant, it is within the discretion of the trial court to exclude the evidence where its probative value is outweighed by possible jury prejudice. *Boller v. Cofrances, supra; Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d

557. However, we find it unnecessary to consider a challenge to the discretion of the trial court in the instant case since we agree that the evidence was properly excluded on the ground that it was irrelevant. *State v. Watkins* (1968), 39 Wis. 2d 718, 159 N. W. 2d 675.

Defendant also argues that by refusing to allow inquiry of Kennedy and Orchard as to their relationship, he was denied a substantial right to offer evidence which would corroborate and explain his version of the facts. *Logan v. State* (1969), 43 Wis. 2d 128, 168 N. W. 2d 171. However, at no time was there a showing that the attempted inquiry would have corroborated defendant's version of his conduct. The attempted inquiry was made on cross-examination before the defendant had testified. It is axiomatic that a denial or refusal to answer by either witness would have vitiated any subsequent attempt at corroboration.

Defendant finally argues that the court erred in refusing to allow him to relate what Orchard had told him earlier that evening and what he had replied. The trial court sustained the objection thereto on the ground that the offer of proof was immaterial, self-serving and hearsay.

". . . As a general rule accused is not permitted, in order to explain his intention in doing an act already proved, to show his self-serving declarations, not a part of the res gestae, as to his reason for, or intent in, such act. The jury are the judges of the purpose and intent of accused's action, and ordinarily they should not consider his explanatory statements unless they are a part of the res gestae." 22A C. J. S., *Criminal Law,* pp. 1087, 1090, 1091, sec. 737.

What is a part of the *res gestae* is largely left to the discretion of the trial court and is dependent upon whether the statement is so related in terms of time as to

be trustworthy. *State v. Smith* (1967), 36 Wis. 2d 584, 153 N. W. 2d 538. We conclude that the trial court did not abuse its discretion in excluding the offer of proof on this basis.

Finally, even if we were to assume that any or all of the offered testimony and attempted inquiry by defense counsel constituted error, it was not prejudicial in terms of affecting the outcome of the trial. This court has repeatedly held that errors occurring during the course of trial will not be the basis of overturning a conviction unless it clearly appears that absent such error the result would probably have been more favorable to the defendant. *Zebrowski v. State, supra; Woodhull v. State, supra;* and *Berg v. State, supra.* The record reveals that both Orchard and Kennedy gave positive testimony that defendant had demanded the money and that Kennedy handed it to him in response thereto. Kennedy testified that defendant held a knife at his throat all during this time. It is undisputed that defendant divided the money between Martinek, Miller and himself. Furthermore, in support of defendant's theory of the incident, there was testimony that Orchard did not want to go with Kennedy; that defendant went after Kennedy with the intent to get Orchard away from him; and, that she had asked the defendant to help her. Defendant himself was allowed to testify to his own declaration to Orchard at the scene of the incident indicating she had asked him for help. If such were the case, it is equally as logical for the defendant to have prevented Orchard from going with Kennedy prior to the time they left rather than to follow them out of town. However, Orchard testified that at the scene she told the defendant she did not want to go with him and did not want his help. This testimony is supported by the fact that she got back into the truck and returned to town with Kennedy. The fact that Kennedy may have

paid money for the services of Orchard was highly prejudicial and had little bearing on defendant's contention that Orchard had asked him to come after her.

*By the Court.*—Judgment affirmed.