BARREN, Plaintfif in error, v. STATE, Defendant in error.

*Nos. State 222, 223.   Argued June 7, 1972.—Decided June 30, 1972.*
(Also reported in 198 N. W. 2d 345.)

For the plaintiff in error there was a brief and oral argument by *Franklyn M. Gimbel* of Milwaukee.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J.   The issue presented in this case is whether the trial court improperly restricted the defendant's claimed right to cross-examine the state's chief witness, who was the victim of the alleged offenses.

Therefore, we do not deem it necessary to set forth the facts in complete detail.

The victim finished work in late afternoon on the day of the incident, stopped in at a tavern on his way home, and cashed his pay check. He went home and later in the evening went to another tavern where he had some drinks and played pool for several hours. He then went to a restaurant. He testified that while at the restaurant a woman came in, sat down beside him and a conversation ensued which resulted in an agreement that the victim would go to her apartment to have sexual intercourse for money. The woman denied the fact that she was in the restaurant or made any such agreement. The victim further testified that he was in the woman's apartment at about 4 a. m. when the defendant and another man, who claimed to be the woman's husband, entered the apartment. An altercation ensued between the two men and the victim, and it is alleged his wallet, car keys, and watch were taken and that the defendant stabbed him in the chest with a knife. The victim was taken to the hospital in a police ambulance.

During the trial the defendant attempted to impeach the testimony of the victim and attack his credibility by demonstrating that he had "a drinking problem."

The victim testified he had three beers during the course of the evening and while playing pool. On cross-examination, the victim was asked if he had ever been convicted of a crime. He replied in the negative, with the exception of charges for disorderly conduct and driving without a license. The transcript of the preliminary examination was then introduced into evidence, which reflected he had testified he consumed four or five drinks during the evening. He also contradicted himself as to whether or not he had talked to anyone else in the restaurant besides the woman. It was also brought out that he had been convicted of three crimes.

Defense counsel then inquired of the victim as to whether he had a drinking problem. The trial court sustained an objection based on immateriality; whereupon, at the request of defense counsel, an offer of proof was made out of the presence of the jury. Defense counsel offered to show that the victim had a drinking problem in that he had had 18 convictions in the past nineteen-and-one-half years, all of which related to drinking offenses; and, therefore, his testimony that he spent several hours in a tavern on the night of the incident while consuming only three beers was incredible. Upon inquiry by the court, the victim stated he had never received treatment for any alcoholic problem. The court rejected the offer of proof on the ground that it was immaterial.

In *Nicholas v. State* (1971), 49 Wis. 2d 683, 688, 183 N. W. 2d 11, this court expressed the rationale for allowing evidence of prior criminal convictions to impeach a party or a witness:

"The fact of prior convictions and the number thereof is relevant evidence because the law in Wisconsin presumes that one who has been convicted of a crime is less likely to be a truthful witness than one who has not been convicted. In addition, the number of prior convictions is also held to be relevant evidence on the issue of credibility because the more often one has been convicted, the less truthful he is presumed to be. *Liphford v. State* (1969), 43 Wis. 2d 367, 168 N. W. 2d 549. This presumption obtains in both civil and criminal litigation. *Underwood v. Strasser* (1970), 48 Wis. 2d 568, 180 N. W. 2d 631."

The evidence is unclear in the instant case as to whether any or all of the 18 offenses sought to be introduced were criminal convictions (felonies and misdemeanors) or ordinance violations. Under sec. 885.19, Stats., ordinance violations may not be used for purposes of impeachment. *Massen v. State* (1969), 41 Wis. 2d 245, 256, 163 N. W. 2d 616. In any event, the attempt by

defense counsel in proffering such evidence was not to show the fact of prior arrests and convictions but rather to show that the victim had a prior history of drunkenness.

Generally, the character of a witness may be impeached only in regard to matters which go directly to his reputation for truth and veracity. *State v. Eisenberg* (1970), 48 Wis. 2d 364, 378, 180 N. W. 2d 529. The fact that a witness was intoxicated, on or about the time of the happening of the incident he is testifying to, would affect the accuracy and credibility of his testimony. *Pollock v. State* (1908), 136 Wis. 136, 116 N. W. 851. However, the mere fact a witness upon occasion becomes drunk would not affect his credibility. 3A Wigmore, *Evidence* (Chadbourn rev.), pp. 761, 762, sec. 933, states:

". . . Intoxication, if it is of such a degree as to deserve the name, involves a numbing of the faculties so as to affect the capacity to observe, to recollect, or to communicate; and is therefore admissible to impeach:

". . . But a general *habit of intemperance* tells us nothing of the witness' testimonial incapacity except as it indicates actual intoxication at the time of the event observed or the time of testifying; and hence, since in its bearing upon moral character it does not involve the veracity trait (sec. 923 *supra*), it will usually not be admissible."

McCormick, *Evidence* (hornbook series), pp. 98, 99, sec. 45, states:

". . . One form of abnormality is that of being under the influence of drugs or drink. If the witness was under such influence at the time of the happenings which he reports in his testimony or is so at the time he testifies, this of course is provable, on cross or by extrinsic evidence, to impeach. Habitual addiction stands differently. Under a tradition arising perhaps when three-bottle men were more frequently encountered, it is generally held

that the mere fact of chronic alcoholism is not provable on credibility. On the other hand, as to drug-addiction to which more social odium has been attached, many decisions allow it to be shown to impeach, even without evidence that it did in the particular case affect truthtelling, while an equal number, absent a particular showing of effect on the witness's veracity, would exclude it. In respect to both addictions the excluding courts seem to have the better of the arguments. It can hardly be contended that there is such scientific agreement as to warrant judicial notice that addiction of itself usually affects credibility. Certainly it is pregnant with prejudice."

*See generally:* 98 C. J. S., *Witnesses,* pp. 328, 329, sec. 461 h; 58 Am. Jur., *Witnesses,* pp. 381, 382, sec. 704; Annot. (1966), *Impeachment of Witness with Respect to Intoxication,* 8 A. L. R. 3d 749.

While this court has recognized that a witness who is addicted to drugs is less likely to be truthful, *Edwards v. State* (1970), 49 Wis. 2d 105, 181 N. W. 2d 383, no such recognition has been given to a witness who, on occasion, becomes drunk.

In view of the considerable number of years during which the 18 offenses occurred and a failure to relate the offenses to the time in question, such evidence would neither establish that the victim was a habitual or chronic alcoholic, nor that he consumed more to drink on the night of the incident than he was willing to admit. *Cf. Kuenster v. Woodhouse* (1898), 101 Wis. 216, 219, 77 N. W. 165. Although in certain situations, more latitude should be given on cross-examination where the state's case is dependent upon the testimony of a single witness, *State v. Buss* (1956), 273 Wis. 134, 139, 76 N. W. 2d 541, the attempted inquiry must still withstand the test of relevancy and materiality. In this case, no attempt was made, by way of direct testimony, to discredit the victim's statement as to how many drinks he had on this particular night.

The trial court properly rejected the proffered testimony on grounds of immateriality. *See: State v. Becker* (1971), 51 Wis. 2d 659, 667, 188 N. W. 2d 449; *Miller v. State* (1972), 53 Wis. 2d 358, 367, 192 N. W. 2d 921.

*By the Court.*—Judgment and order affirmed.