STATE of Wisconsin, Plaintiff-Respondent,

v.

Johrie DYESS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 83–891–CR. Argued October 31, 1984.—*
*Decided June 28, 1985.*

(Also reported in 370 N.W.2d 222.)

526

For the defendant-appellant-petitioner there were briefs by *William J. Tyroler* and *William Reddin,* assistant state public defenders, and oral argument by *Mr. Tyroler.*

For the plaintiff-respondent there was a brief by *Jeffrey M. Gabrysiak,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general, and oral argument by *Daniel O'Brien,* assistant attorney general.

HEFFERNAN, CHIEF JUSTICE. This is a review of a decision of the court of appeals which affirmed the conviction of Johrie Dyess for homicide by the negligent use of a motor vehicle.[1]

---

[1] The defendant was found guilty after a jury trial in the circuit court for Racine county, Dennis D. Costello, circuit judge, on September 30, 1982. The conviction was affirmed by decision of the court of appeals on March 7, 1984. The per curiam opinion was not published.

We reverse the court of appeals, because the jury instructions violated sec. 903.03(3), Stats.,[2] in that the jury was told that it was required to find the defendant had committed an element of the crime, *i.e.*, that he was negligent, if there was evidence from which the jury could conclude that the defendant was exceeding the speed limit at the time the accident occurred.

We conclude that the error was prejudicial. We reverse and remand for a new trial.

The undisputed facts underlying the prosecution are these. On May 31, 1982, Dyess, the twenty-three-year-old defendant driver, collided with a vehicle driven by Jack Rizzo at an intersection in the city of Racine. At the time, Dyess was proceeding west, Rizzo north. Dyess

---

[2] Sec. 903.03, Stats., provides:

"903.03 **Presumptions in criminal cases.** (1) SCOPE. Except as otherwise provided by statute, in criminal cases, presumptions against an accused, recognized at common law or created by statute, including statutory provisions that certain facts are prima facie evidence of other facts or of guilt, are governed by this rule.

"(2) SUBMISSION TO JURY. The judge is not authorized to direct the jury to find a presumed fact against the accused. When the presumed fact establishes guilt or is an element of the offense or negatives a defense, the judge may submit the question of guilt or of the existence of the presumed fact to the jury, if, but only if, a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find guilt or the presumed fact beyond a reasonable doubt. When the presumed fact has a lesser effect, its existence may be submitted to the jury if the basic facts are supported by substantial evidence, or are otherwise established, unless the evidence as a whole negatives the existence of the presumed fact.

"(3) INSTRUCTING THE JURY. Whenever the existence of a presumed fact against the accused is submitted to the jury, the judge shall give an instruction that the law declares that the jury may regard the basic facts as sufficient evidence of the presumed fact but does not require it to do so. In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the judge shall instruct the jury that its existence must, on all the evidence be proved beyond a reasonable doubt."

had the directional right-of-way and, in addition, he was proceeding on what was at that point an arterial highway. Rizzo's entrance into the intersection was subject to a stop sign controlling traffic intending to cross 14th street, the arterial on which Dyess was proceeding. There were no traffic control signs on 14th street which required Dyess to stop. The posted and authorized speed limit for the westbound Dyess was 30 miles per hour. The speed limit for the northbound Rizzo was 25 miles per hour.

Disputed are the questions of whether Rizzo ever made the required stop before entering the intersection and whether Dyess was exceeding the 30-mile-per-hour speed limit.

The Dyess vehicle struck the right rear quarter of the Rizzo car, causing Eve King, a passenger in the Rizzo car, to be thrown out of the vehicle. Initial investigation at the scene did not indicate serious injuries. However, internal bleeding resulting from the accident subsequently caused the death of King.

Dyess was charged with homicide by negligent use of a vehicle.[3]

Two Racine Police Department traffic officers testified that, based on the damage to the vehicles, the speed of the Dyess car was a contributing factor in the accident. One officer testified that, based on the damage to the vehicles and their positions on the roadway, the Dyess car was proceeding at a speed in excess of the

---

[3] Sec. 940.08, Stats. (1981–82), provides:

"940.08 **Homicide by negligent use of vehicle or weapon. (1)** Whoever causes the death of another human being by a high degree of negligence in the operation or handling of a vehicle, firearm, airgun, knife or bow and arrow is guilty of a Class F felony.

"(2) A high degree of negligence is conduct which demonstrates ordinary negligence to a high degree, consisting of an act which the person should realize creates a situation of unreasonable risk and high probability of death or great bodily harm to another."

posted limit of 30 miles per hour. Neither officer observed the speed of either vehicle or the conduct of the respective drivers prior to the collision.

Two additional witnesses for the state, Edwin and Judith Kossow, testified that, about two blocks from the site of the accident, while they were at a stop light, they were passed by a vehicle they stated was Dyess' at a speed originally testified to as 40 miles per hour. Edwin Kossow acknowledged that his estimate could be inaccurate by five miles per hour and stated it was possible, but not likely, that he might be in error by as much as 10 miles per hour. He acknowledged that he could not estimate the speed of the Dyess vehicle at the point of the collision two blocks away.

Judith Kossow gave similar testimony, stating that she believed the Dyess vehicle was going 40 miles per hour. While she acknowledged some fallibility in her estimate of speed, she did not think the Dyess car was going as slowly as 30 miles per hour.

Another state witness, who originally testified that Dyess was proceeding at a speed of 50 miles per hour or more, acknowledged on cross-examination that his estimate of speed was based on the post-collision damage and not upon the observation of the vehicles prior to the crash.

None of the state's witnesses professed to be expert in the field of accident reconstruction, and none of them had any training in the science of determining speed from post-crash-damage evidence.

Dyess presented three witnesses whose testimony, if believed, would have supported a finding that his speed was lawful.

A member of Northwestern University's Traffic Institute testified for Dyess as an expert that, based upon the damage, the speed at impact of the Dyess car was 21 or 22 miles per hour, subject to a possible error of less than two miles per hour.

The passenger in the Dyess car, Gerald Simpson, stated that the speed of his host's vehicle as it entered the intersection was 20–25 miles per hour. He made his estimate of speed on his experience as a driver of automobiles. He denied that Dyess had run a red light two blocks back and stated the light had flashed yellow just as they entered that intersection.

Dyess testified on his own behalf and stated that he had not been exceeding the 30-mile-per-hour limit at any time just prior to the accident. He stated that he knew this because he had checked his speedometer.

Moreover, there was evidence that Rizzo had failed to stop, as required, before entering the intersection. The original accident report of Officer Michael R. Miller stated that a factor in causing the collision was Rizzo's failure to yield the right-of-way. Additionally, Cecilia Totten, who was proceeding south on Park street, approached the intersection at approximately the time of the collision. She testified that she was "very sure" that Rizzo had not made the required stop before entering the intersection.

Rizzo was cited under a municipal ordinance for failure to yield the right-of-way. This municipal citation was dismissed after the criminal charge was brought against Dyess. The circuit judge, citing *Barren v. State*, 55 Wis. 2d 460, 463, 198 N.W.2d 345 (1972), refused to allow the ordinance violation to be used for impeachment purposes. Accordingly, the jury was not informed that there ever was a municipal action brought against Rizzo.[4]

At the time of the jury instruction conference, the trial judge was persuaded, over the objection of defense

[4] Rizzo's contributory negligence, if any, would not exonerate Dyess' criminal conduct, if such criminal conduct were proven. *See, Hart v. State*, 75 Wis. 2d 371, 398, 249 N.W.2d 810 (1977), and cases cited therein.

counsel, to include the substance of Civil Jury Instruction No. 1290 in the instructions to the jury.[5]

This civil jury instruction found expression in the jury instruction in the following form:

"Under Wisconsin law, regulating speed of motor vehicles, it is provided that no person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing, and that the driver shall exercise ordinary care to so regulate his rate of speed as may be necessary to avoid colliding with any object, person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and using due care.

"The safety statute in the motor vehicle code provides that, no person shall drive a vehicle at a speed in excess, and on 14th Street in particular, of 30 miles per hour. *Any speed in excess of that limit would be negligent speed regardless of other conditions.* It is for you to determine whether Johrie Dyess's speed was over said limit and, if under, whether it was, nevertheless, a negligent speed under the conditions and circumstances then present and under the rules of law given to you in these instructions." (Emphasis supplied.)

The trial court went on to point out, however, that more than a finding of negligence was required to sustain a criminal conviction under sec. 940.08, Stats.:

[5] Wis. JI–Civil No. 1290 (1970) provides:

"1290 SPEED: FIXED LIMITS

"[This instruction may be used in addition to Wis JI—Civil 1285.]

"A safety statute provides that no person shall drive a vehicle at a speed in excess of —— miles per hour ——; any speed in excess of that limit would be negligent speed regardless of *(other)* conditions.

"It is for you to determine whether (name's) speed was over said limit and, if under, whether it was nevertheless a negligent speed under the conditions and circumstances then present and under the rules of law given to you by these instructions."

"But the negligence which constitutes a high degree of negligence and which is requisite for conviction of homicide by negligent use of a vehicle is conduct that not only creates an unreasonable risk of bodily harm to another but also involves a high degree of probability that substantial bodily harm will result to such other person.

"In other words, the danger of injury which characterizes ordinary negligence is magnified to a high degree."

The jury returned a verdict of guilty. Because of Dyess' prior good record, no incarceration was imposed. Rather, Dyess was directed to perform a substantial amount of community service work.

Motion for new trial was brought on several grounds, all of which were denied.

On appeal to the court of appeals, Dyess argued that the trial court had improperly permitted testimony of speed based on the opinion of non-experts' evaluation of post-collision damage, and also argued that the jury instructions were constitutionally and statutorily invalid, because they created a conclusive presumption of negligence. Additionally, it was argued that the instructions were invalid because they misdefined reasonable doubt.

The decision of the court of appeals affirmed the trial court. The opinion was largely devoted to the evidentiary questions, all of which were resolved against Dyess.[6]

The argument that the jury instructions improperly and impermissibly directed the jury to find an elemental fact necessary to prove criminal conduct was disposed of in a few words:

"Dyess contends that speeding is the 'basic fact' and negligence is the elemental fact to be presumed.

---

[6] The court of appeals, although holding it was error for the non-expert police officer to give an opinion as to speed based upon the condition of the vehicles after the accident, concluded that the error was harmless.

"Dyess' argument might be successful if a finding of guilt under sec. 940.08, Stats., rested on a mere finding of negligence. A jury however, cannot stop its consideration at that point. A jury must find not only negligence but also a 'high degree of negligence' as defined by the trial court. Negligence is not an elemental fact of the offense charged. A high degree of negligence is the elemental fact, and the instruction does not create a presumption as to a high degree of negligence.[1]

---

[1] The same rationale defeats Dyess' Argument premised on sec. 903.03(3), Stats. That statute requires special additional instruction only if the presumed fact is an element of the offense." Slip opinion, pages 7–9.

Dyess petitioned this court for review. Upon acceptance of the petition, we stated that we would not review whether the admission of non-expert police testimony as to speed was harmless but we would review whether the standards of sec. 903.03(3), Stats., and the constitution were adhered to in instructing the jury.

In the event we conclude that the statutory standards of sec. 903.03(3), Stats., were not adhered to, we need not determine whether or not the instructions were constitutionally impermissible under the strictures of *Sandstrom v. Montana,* 442 U.S. 510 (1979). This court has frequently concluded that it need not address a claim of constitutional error if the claim can be resolved on statutory or common law grounds. *Labor & Farm Party v. Elections Board,* 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984); *Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47 (1981).

We therefore consider the correctness of the questioned jury instructions first on the statutory ground. Do the rules of evidence, sec. 903.03(3), Stats., adopted by this court prohibit an instruction which *requires* a jury to find a presumed fact necessary to support a conviction because the basic facts appear in the evidence from which the jury could infer the presumed fact. We

conclude that our rules specifically give no approval to the form of instruction used and that the instruction here was tantamount to directing the jury to bring in a finding that was essential to the determination of guilt. As sec. 903.03(2) points out, "The judge is not authorized to direct the jury to find a presumed fact against the accused." Because this erroneous partial direction of the verdict had the effect of denying the defendant a substantial right—the right to have an undirected jury determination on the basic question of negligence—the error was not harmless under the provisions of sec. 805.18[7] and in light of the evidentiary facts revealed in the record as a whole. Because we conclude that the instruction constituted prejudicial error under sec. 903.03 (3), Stats., we need not reach the constitutional issue of the validity of the instruction under *Sandstrom v. Montana,* 442 U.S. 510 (1979).

Dyess specifically contends that the instruction violated sec. 903.03(3), Stats., which requires that:

"Whenever the existence of a presumed fact against the accused is submitted to the jury, the judge shall give an instruction that the law declares that the jury may regard the basic facts as sufficient evidence of the presumed fact but does not require it to do so."

---

[7] Sec. 805.18, Stats. (1981–82), provides:

"**805.18 Mistakes and omissions; harmless error.** (1) The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.

"(2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of drawing, selection or misdirection of jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial."

The state argues that Dyess waived his objection on sec. 903.03, Stats., grounds by his failure to specifically refer to that rule when objecting to the instructions at trial. It is clear, however, that the defendant at trial did specifically object to the use of Civil Jury Instruction No. 1290, speed in excess of posted limits as being negligent. That objection went to the very heart of the rationale by which directions to the jury to find presumed facts against a defendant are forbidden in criminal cases although they may be permissible in civil cases. The substance of the objection was clearly stated.

Moreover, the strictures of sec. 903.03(3), Stats., go to the authority of the judge. They deny the judge the prerogative in a criminal case to place certain limitations upon a criminal defendant's right to a jury finding under the Wisconsin law. If error there be in this case, it is within the discretion of this court to determine whether the judge acted unlawfully and in excess of his authority in light of sec. 903.03, irrespective of whether there was an objection based on a specific statute or rule. This court exercised its discretion when, in its order granting review, it directed an inquiry into the effect of sec. 903.03(3). The court of appeals did not dispose of the sec. 903.03 position on the state's argued waiver grounds. Instead, it perfunctorily addressed defendant's argument in footnote 1 of its per curiam opinion by saying that the fact directed to be found, negligence, was not an element of sec. 940.08.

We are satisfied that the question of whether the instruction satisfied the evidentiary rule regarding presumptions in criminal cases is properly before the court. Moreover, even were there a meritorious waiver argument—and there is none in this case—the contemporaneous-objection rule is not as inflexible as the state insists. In the absence of a defendant's "right" to raise a

question not contemporaneously raised by objection at trial, this court, even prior to the broad discretionary grant of power to consider issues specifically conferred by the 1977 constitutional revision, had the option of considering issues if it appeared to the court to be in the interests of good judicial administration to do so. *See, State v. Cheers,* 102 Wis. 2d 367, 378 n. 7, 306 N.W.2d 676 (1981).

The state also argues that sec. 903.03(3), Stats., is simply not applicable to the issue which the jury was directed to find. The state does not argue that the instruction did not tell the jury that, if it did find from the evidence that Dyess was speeding, then it must in further answering the questions presume or find that Dyess was negligent. The state argues this directed finding is not a factual conclusion but a legal one. Hence, the state argues, it was not error to direct a "finding" or "conclusion" on this legal question. The state points out that the constraints of sec. 903.03(3) refer only to the "existence of a presumed *fact*." (Emphasis supplied.) However, the very language of sec. 903.03(1) refutes this argument, for it sets forth that the statute, sec. 903.03 as a whole, governs presumptions "recognized at common law." Hence, even were we to accept the semantics of the state's argument that it is a common *law* presumption in civil law that one who is speeding is negligent, in the criminal law, under sec. 903.03(3), the basic facts create at best only an inference from which a presumed fact may be arrived at in the jury's discretion, but the presumption cannot be compelled at the judge's direction.

No one in the instant case finds fault with Civil Jury Instruction No. 1290 as used in civil cases, but the authority to direct a jury in a criminal case that speed in excess of the posted limit, regardless of other conditions, is negligence, is specifically prohibited by sec. 903.03(3), Stats.

It is clear from the Judicial Council's notes to sec. 903.03, 59 Wis. 2d R57 (1973), that the restrictions in that rule apply to all presumptions sought to be used in criminal cases. No exceptions to the rule have been sanctioned on the basis that the matter to be presumed is legal rather than factual in nature.

The state also argues that sec. 903.03(3), Stats., is not applicable, because a permissive inference instruction is required only when "the existence of a presumed fact against the accused is submitted to the jury." The state would attempt to eviscerate the rule by saying that, because the judge decided the negligence question as a matter of law—*i.e.*, if the jury found Dyess was travelling in excess of 30 miles per hour, he was negligent—the negligence question was never submitted to the jury. Hence, the state argued that the provisions of sec. 903.03(3) are irrelevant.

This analysis of the statute fails to consider the difference between a basic fact and a presumed fact. The statute applies when the jury is presented with basic facts, which it may or may not accept, and is then asked to use them as an inferential basis for determining a presumed fact. Here, the basic facts—which were disputed—were the evidentiary tidbits regarding the speed of the Dyess car. The presumed fact which could have been arrived at by a process of jury inference was negligence. The state evinces confusion by assuming that the presumed fact was whether the speeding of Dyess' car was negligent conduct. This rationale which telescopes and intermingles the basic facts with the fact sought to be presumed, thwarts any articulable analysis of the statute in relation to the situation here.

The state also contends that the statute only applies when the judge instructs in terms of a permissive inference, but when the judge phrases his directions in the terms used here, as a conclusive presumption—"speeding is negligent conduct"—no statutory prohibition is vio-

lated.  To so conclude would, however, make nonsense of the rule, which by its terms is intended to govern the use of any theories of common or statutory law whereby certain facts may be presumptive proof of other facts in criminal prosecutions.

This latter argument of the state, to give it the benefit of some semblance of rationality, may be but a variant of the argument earlier addressed—that negligence is not a presumed fact at all because it is a legal conclusion and, therefore, beyond the reach of the rule.

The basic argument of the state before the court of appeals—and it was upon this that the court of appeals relied—was that sec. 903.03(3), Stats., places restrictions only upon the presumptive determination of the "elements" of a crime and not upon other facts.

The court of appeals found no violation, because, under sec. 940.08, Stats., "[a] *high degree* of negligence is the elemental fact, and the instruction does not create a presumption as to a high degree of negligence."  (Emphasis supplied.)  Slip opinion at page 8.

The court of appeals, as well as the trial court, concluded that negligence was not an element of the crime and it is only "elements" that may not be determined by judge-directed presumptions.

If, however, sec. 903.03, Stats., were applicable only to elements of a crime and negligence is not an element of sec. 940.08, then the statute would be irrelevant.  To so contend is to disregard the very words of the statute.  Sec. 903.03(1), in describing the scope of the rule, refers to "facts" that are prima facie evidence of other "facts."  Sec. 903.03(3) refers to "presumed facts."  Nowhere is there any reference to "elements" of a crime which would lead a reasonable reader to conclude that directed presumptions are permissible if the matter to be presumed is not an element of the crime.  Had the intent been to limit the application of the rule to "elements," the draft-

ers of the rule would have so specified. Moreover, the scriveners of the state rule in their report include the comments of the Federal Advisory Committee on the analogous rule. The Federal Committee stated that the statute addresses presumptions as to any fact before the jury whether or not the fact establishes guilt or is an element of the offense.[8] 59 Wis. 2d at R64.

Sec. 903.03(3), Stats., makes no distinction between presumptions as to elements of a crime and presumptions as to facts with a "lesser effect" with respect to the requirement that the jury be instructed only as to the permissive inference that may be drawn from basic facts believed beyond a reasonable doubt.

The trial judge, had he followed the directions of sec. 903.03(3), Stats., would have informed the jury that, if it found as a matter of fact that Dyess was exceeding the posted speed limit of 30 miles per hour, it could regard that fact as sufficient evidence of negligence to make that finding but it was not required to do so.

Here the trial judge told the jury that, "Any speed in excess of that [30 miles per hour] limit would be negligent speed regardless of other conditions." He then went on to tell the jury that, were they to find that the speed was under 30 miles per hour, they could nevertheless determine whether the speed was negligent. The jury was mandatorily directed to find negligence if speed in excess of 30 miles per hour was proved. Discretion to permissibly draw an inference from the facts was vested in the jurors only if they found the speed to be less than that posted.

---

[8] It should also be pointed out that at least two cases have held, contrary to the language of the court of appeals in this case, that a high degree of negligence under sec. 940.08, Stats., consists of two elements: (1) Negligence and (2) a high probability of death or great bodily harm. *Hart v. State,* 75 Wis. 2d 371, 383, 249 N.W.2d 810 (1977); *State v. Cooper,* 117 Wis. 2d 30, 38, 344 N.W. 2d 194 (Ct. App. 1983).

Here the judge required the jury to find the presumed fact on the evidence of the basic facts. This was in violation of the rule:

". . . the judge shall give an instruction that the law declares that the jury *may* regard the basic facts as sufficient evidence of the presumed fact but does not require it to do so." (Emphasis supplied.) Sec. 903.03 (3), Stats.

No language in the judge's charge permitted the jury to conclude that it was *permitted* but not *required* to use the evidence of speeding as proof of negligence.

The instruction given was violative of sec. 903.03(3), Stats. This finding of error requires us to consider whether the error was harmless.

We conclude that the error was not harmless and the judgment must be reversed.

This court for years has been struggling with methodology to rationalize upholding a conviction despite the acknowledgment that error has been committed. Certainly, many errors in the course of trial are of a trivial nature and affect the final result not one whit. Hence, it is reasonable, in accordance with public policy and judicial economy, to affirm convictions unless it is apparent that the procedure has been unfair, rights have been subverted, or an injustice has been done. Most errors are truly harmless. Nevertheless, the great virtue of our legal system—at least its great objective—is that only the guilty be convicted and even the guilty be convicted only by due process of law after guilt has been demonstrated beyond a reasonable doubt. Hence, when error is committed, a court should be sure that the error did not affect the result or had only a slight effect. While our numerous efforts to adopt an ad hoc "harmless error" methodology cannot be said to have resulted in a course of injustice, they do not reveal a coherent articulable philosophy consistent with the elementary principles

stated above.[9] When it is clear that error has been committed, we should be sure that the error did not work an injustice. The only reasonable test to assure this result is to hold that, where error is present, the reviewing

[9] Under the test of harmless non-constitutional error set out by this court in *Wold v. State,* 57 Wis. 2d 344, 204 N.W.2d 482 (1973), an error is harmless if an appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the error, which would convict the defendant beyond a reasonable doubt. *Id.* at 356–57.

In *Hart,* 75 Wis. 2d at 394, we held that the non-constitutional error would not be harmless if the result would have been more favorable to the defendant if the error had not occurred.

In *Moore v. State,* 83 Wis. 2d 285, 265 N.W.2d 540 (1978), the test for non-constitutional error was stated in somewhat less stringent terms than those in the formulation of *Hart.* In *Moore,* where the error was the erroneous admission of evidence, the court said:

"The effect of the erroneously admitted evidence must be realistically evaluated in the context of the case, and a new trial will not be granted unless the error was so prejudicial that a different result *might have been* reached if the evidence had not been admitted." (Emphasis supplied.) (At 296)

Many recent cases involving non-constitutional error have applied the test of harmlessness, originally advocated in the context of a constitutional error, in the concurring opinion in *Kelly v. State,* 75 Wis. 2d 303, 321, 249 N.W.2d 800 (1977) (Heffernan, J., concurring). *See, e.g., State v. Cartagena,* 99 Wis. 2d 657, 671, 299 N.W.2d 872 (1981); *Pohl v. State,* 96 Wis. 2d 290, 312, 291 N.W. 2d 905 (1980); *Novitzke v. State,* 92 Wis. 2d 302, 308, 284 N.W. 2d 904 (1979); *State v. Jennaro,* 76 Wis. 2d 499, 509, 251 N.W.2d 800 (1977). Under the formulation of the *Kelly* concurrence, an error is harmless if it is clear that it did not influence the jury or had only a slight effect. 75 Wis. 2d at 321. Essentially the same test has been used by this court in cases involving federal constitutional error: The conviction must be reversed if there is a reasonable possibility that the error contributed to the conviction. *State v. Poh,* 116 Wis. 2d 510, 529, 343 N.W.2d 108 (1984); *State v. Burton,* 112 Wis. 2d 560, 571, 334 N.W.2d 263 (1983); *State v. Billings,* 110 Wis. 2d 661, 667, 329 N.W.2d 192 (1983).

*See,* Comment, *Confusion in the Court—Wisconsin's Harmless Error Rule in Criminal Appeals,* 63 Marq. L. Rev. 643 (1980).

court must set aside the verdict unless it is sure that the error did not influence the jury or had such slight effect as to be *de minimus*. This test has been adopted in *State v. Poh*, 116 Wis. 2d 510, 529, 343 N.W.2d 108 (1984); *State v. Burton*, 112 Wis. 2d 560, 571, 334 N.W.2d 263 (1983); *State v. Billings*, 110 Wis. 2d 661, 667, 329 N.W. 2d 192 (1983).

While these cases have involved constitutional error, as *Kelly v. State*, 75 Wis. 2d 303, 317 n. 3, and 321 (concurring opinion), 249 N.W.2d 800 (1977), points out, the test was originally formulated by the United States Supreme Court in *Kotteakos v. United States*, 328 U.S. 750 (1946), where the error was of non-constitutional proportions. The test of constitutional error of *Poh*, *Burton*, and *Billings* was based on the rationale of the concurring opinion of *Kelly v. State*, 75 Wis. 2d at 321, which, in turn, rested on the rationale of *Kotteakos v. United States, supra*, and *United States v. Agurs*, 427 U.S. 97 (1976). The majority in *Kelly* acknowledged that the test of the majority opinion and the test of the concurring opinion in that case would have yielded the same result irrespective of how the harmless error rule was explained or justified. There seems to be no special virtue in having different harmless error tests for constitutional error and non-constitutional error. Moreover, this court has more and more resorted to the *Agurs-Kotteakos-Kelly concurrence* methodology as a test of harmless error in cases involving non-constitutional, as well as constitutional, error. *State v. Cartagena*, 99 Wis. 2d 657, 671, 299 N.W.2d 872 (1981); *Barrera v. State*, 99 Wis. 2d 269, 295, 298 N.W.2d 820 (1980); *Pohl v. State*, 96 Wis. 2d 290, 312, 291 N.W.2d 554 (1980); and *Novitzke v. State*, 92 Wis. 2d 302, 308, 284 N.W.2d 904 (1979), were all non-constitutional error cases in which this court concluded that the proper test was whether there was a reasonable possibility that the error con-

tributed to the conviction. As this formulation was stated by Justice Callow in *Novitzke, supra:*

". . . the harmless error test would require reviewing courts to set aside the verdict and judgment unless sure that the error did not influence the jury or had but only slight effect. *Kelly v. State,* 75 Wis. 2d 303, 317 n. 3, 249 N.W.2d 800 (1977)."

This court has often noted that there is little practical difference between the formulations of harmless error which the court has used from time to time. Often, we have concluded that the determination of whether the trial error was harmless is unaffected by the particular formulation of the harmless error test used. *Cartagena,* 99 Wis. 2d 657, 671; *Pohl,* 96 Wis. 2d 290, 311–12; *Novitzke,* 92 Wis. 2d 302, 308; *Kelly,* 75 Wis. 2d 313, 317 n. 3.

We conclude that, in view of the gradual merger of this court's collective thinking in respect to harmless versus prejudicial error, whether of omission or commission, whether of constitutional proportions[10] or not, the test should be whether there is a reasonable possibility that the error contributed to the conviction. If it did, reversal and a new trial must result. The burden of proving no prejudice is on the beneficiary of the error, here the state. *Billings,* 110 Wis. 2d at 667. The state's burden, then, is to establish that there is no reasonable possibility that the error contributed to the conviction.

[10] The exception would be those cases where the constitutional error automatically results in reversal. The United States Supreme Court has held that "some constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California,* 386 U.S. 18, 23 (1967). *See,* for example, *Payne v. California,* 356 U.S. 560 (1958) (right to be free from coerced confession); *Gideon v. Wainwright,* 372 U.S. 335 (1963) (right to counsel); *Tumey v. Ohio,* 273 U.S. 510 (1927) (right to impartial judge).

In arriving at this formulation as the standard for assessing prejudice, we take guidance from the recent United States Supreme Court decision in *Strickland v. Washington*, —— U.S. ——, 104 S. Ct. 2052 (1984). In *Strickland*, the Court stated the test of prejudice which must be applied to determine whether reversal is required in cases of defective performance by counsel.[11] The conviction must be reversed, under *Strickland,* if:

". . . there is a reasonable probability that, but for . . . [the] errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

". . . [T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. . . . Taking the [findings unaffected by error] as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if . . . the decision reached would reasonably likely have been different absent the errors." —— U.S. ——, 104 S. Ct. at 2068–69.

Although the Court uses the words, "reasonable probability" of a different outcome, in contrast to our use of "reasonable possibility," it is clear from the *Strickland* opinion that the Supreme Court's test is substantively the same as ours. The Supreme Court uses the word, "probability," in the sense of likelihood. —— U.S. ——, 104 S. Ct. at 2069. It explains that for a different outcome to be "reasonably probable" it need not be "more likely than not" (*id.* at 2068) ; a reasonable probability of a different outcome is one that raises a reasonable doubt about guilt,

[11] We note, however, that there is a significant difference between the application of the *Strickland* test of prejudice in the context of a claim of attorney error and in the instant context of a claim of trial court error. In the ineffective assistance of counsel claim, the burden of proof of prejudice is on the defendant raising the claim. —— U.S. ——, 104 S. Ct. 2068–69. In the context of trial court error, such as is present here, the burden of proof is on the beneficiary of the error, the state, to establish that the error was not prejudicial. *Billings,* 110 Wis. 2d at 667.

a "probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* at 2068–69.

This formulation of the test for prejudice is not binding on this court in this case because the error we address is neither one of constitutional statute nor one of deficient performance by counsel. Nevertheless, we find the *Strickland* formulation instructive.

The *Strickland* analysis confirms our recognition in recent cases that there are few meaningful distinctions among the various formulations of the test for prejudice. *See,* 104 S. Ct. at 2068. We conclude that the test of prejudice as formulated in *Strickland* subsumes the various statements of the harmless error test that this court has used over the years.

This formulation, with its focus on whether the error "undermine[s] confidence in the outcome" (104 S. Ct. at 2068), is sufficiently sensitive and flexible to apply to a wide range of trial errors. Where the error affects rights of constitutional dimension or where the verdict is only weakly supported by the record, the reviewing court's confidence in the reliability of the proceeding may be undermined more easily than where the error was peripheral or the verdict strongly supported by evidence untainted by error. *See,* 104 S. Ct. at 2069; *id.* at 2073 (Brennan, J., concurring in part and dissenting in part) ; *id.* at 2080 n. 17 (Marshall, J., dissenting).

In the instant case, the erroneous instruction which directed the jury to find negligence on the basis of speed without having the permissive option of rejecting the finding of negligence simply had the effect of wiping out all other evidence on the subject of negligence. Here the jury was told if Dyess was proceeding at over 30 miles per hour, its job in determining whether or not there was negligence was at an end. The only question was how high the degree of negligence—and in this case death did result. Hence, the instruction pretty much removed any jury scrutiny of negligence from the equation of

guilt. Under the instructions, there was no intimation that the jury had to look to any other factors upon which negligence could be predicated.

Although management and control and lookout were mentioned, in effect the jury was told it could forget about those factors if it found speed—and if it found speed, negligence *ipso facto* follows. Thus, the faulty instruction completely permeated and polluted any jury scrutiny of the evidence. There was no other evidence that needed to be looked at. It cannot be said in the scenario of this trial that there was any unpolluted and untainted evidence of negligence.

In the present case, the probability to be weighed is whether the defendant would have been acquitted. Under the facts, the probability of acquittal was substantial in the absence of the error; and in view of the test that guilt must be proved beyond a reasonable doubt, it seems rather apparent that, absent the error, the prospect of conviction would have been substantially less. As pointed out above, the instruction tainted all evidence and could have led a reasonable jury to conclude that no independent evaluation of negligence was required—that proof of speed was sufficient to mandate a conclusion of negligence—and here, where death did ensue, the step to the question of a high degree of negligence was a short step indeed. Moreover, the evidence was close and disputed. While the jury can believe one witness and disbelieve a hundred others, here the evidence of every witness for the state on the question of speeding was equivocal or shown to rest on barely supportable premises. The judge recognized that the question for the jury was close indeed. In such circumstances, it appears likely that, to instruct the jury to give undue—indeed unlawful—mandatory effect to circumstantial evidence substantially skewed the jury's determination to a verdict of guilt. Additionally, Dyess' defense was essentially a "no negligence" defense. To err in that particular—in respect to

the defense upon which Dyess based his case—is almost *ipso facto* prejudicial.

We conclude that, in a case such as this, where the judge erred in the application of the rules of evidence to the case and that error was in respect to a crucial and controlling feature of the crime, the judgment should be reversed unless we can be sure that the error did not contribute to the guilty verdict. Here, looking to the totality of the record, it is apparent that such assurance cannot be reached with any degree of confidence. Hence, in this criminal case the conviction must be reversed.

We recognize that the test of prejudice that we apply here is not completely satisfactory, for it is difficult for this court to assess the likelihood of the jury acting one way or another, had it been properly instructed, when as here the case was a close one. It is apparent that for this court by hindsight to state that the result would have been more favorable to the defendant were the trial conducted under optimum circumstances is in itself a usurpation of the function of the jury, but no more so than to hold that, had the error not been committed, the jury would have reached the same result. At least the former alternative, which results in the granting of a new trial, leaves it to a jury to try again under more propitious circumstances.

Our position is given support by the language of sec. 805.18, Stats., *supra*. While sec. 805.18 (2) is a part of the Code of Civil Procedure and on its face applies only to civil cases, this court has applied its rule to criminal cases, because sec. 972.11 (1) makes the rules of evidence and civil procedure applicable to those cases as well. While a judgment will not be reversed under sec. 805.18 (2) unless the error affects a substantial right of a defendant, in the instant case it is exactly such a substantial right that was effectively curtailed when the trial judge directed a verdict on the question of negligence rather

than permitting the defendant the right to have the jury deliberate on the inference to be drawn from the basic facts.

As the comments of the Judicial Council to sec. 903 of the Rules of Evidence indicate, the principal purpose of the section concerned with presumptions in criminal cases is to assure that judges and lawyers, by the use of desirable presumptions and prima facie evidence, not inadvertently direct verdicts of guilty in criminal cases. To do so would be to deprive a criminal defendant of the presumptions of innocence that are inherent in the criminal process. The adherence to the evidentiary rules set forth in sec. 903.03, Stats., will tend to obviate running afoul of the constitutional restrictions against mandatory presumptions which may result in the denial of a jury trial or a denial of constitutional due process—issues which we do not, and need not, address in this opinion.

It is apparent that a reviewing court cannot say that the loss of a jury right on a crucial issue guaranteed by the rules is of so little consequence as to be insubstantial. Sec. 903.03(3) guarantees to criminal defendants that all presumptions used will have a permissive effect only—that only the jury can find the presumed fact upon the inferences from basic facts which themselves must be proved to the jury beyond a reasonable doubt. This court cannot ignore its own rules and conclude that the deprivation of a substantial procedural and statutory right caused by faulty jury instructions did not, to a degree of reasonable possibility, contribute to the verdict of guilty.

Accordingly, the decision of the court of appeals is reversed and the cause is remanded to the circuit court for a new trial.

*By the Court.*—Decision reversed, and cause remanded to the circuit court for a new trial.

STEINMETZ, J. (dissenting). Assuming the majority's interpretation of sec. 903.03, Stats., is correct, which

I deny, and that using this challenged instruction was an error, I would then find it was harmless error.

The element of the charged crime is "a high degree of negligence," not negligence as stated by the majority on page 527 of the opinion. The element is further defined in sec. 940.08(2), Stats., and the jury was so instructed. Section 940.08(2) states a high degree of negligence is conduct which demonstrates ordinary negligence to a high degree. Negligence alone is not an element, especially since such high degree of negligence must be an act which the person should realize creates a situation of unreasonable risk and high probability of death or great bodily harm to another. No reasonable jury with the instructions given here could confuse negligence with a high degree of negligence.

The jury instructions stating the statutory requirements told the jury there are three "elements" to this offense:[1] "The second element of homicide by negligent use of a vehicle requires that the defendant was operating the vehicle in a manner constituting a high degree of negligence at the time of the accident in which Eve King met her death." Wis. J.I.—Criminal, No. 1170. This instruction does not speak of a high degree of negligence as being composed of separate "elements," but merely "the danger of injury which characterizes ordinary negligence is magnified to a high degree." Such magnification transforms ordinary negligence into an entirely separate and distinct entity—one that is aided in its comprehension by referring to ordinary negligence.

This characterization comports with the legislative history of the term and the history of criminal negligence itself. The legislature in creating the concept of a "high

[1] The first and third elements of this offense are:
"First, that the defendant operated a vehicle.
" . . . .
"Third, that such high degree of negligence on the part of the defendant caused the death of ——."

degree of negligence" in criminal law sought a compromise between the objective concept of "ordinary negligence" and the entirely subjective mental state of "gross negligence." The recurrent problem, and the problem here, is the "failure to distinguish between mental state itself and methods of proving that mental state." Remington and Helstad, *The Mental Elements in Crime—A Legislative Problem,* 1952 Wis. L. Rev. 644. Here the "mental state" is a "high degree of negligence." That is the element in this crime. The method of proving this element, or mental state, includes breaking the concept down to its comprehensive parts—ordinary negligence magnified to a high degree.

"The legislature, apparently concerned about the difficulty in convincing juries of the presence of subjective realization, particularly in cases involving motorists, enacted.a statute entitled 'Negligent Homicide' which was designed to strike a compromise between ordinary negligence and the subjective requirement of gross negligence. The statute incorporates the phrase 'high degree of negligence' which, as interpreted, involves the objective standard of ordinary negligence but requires that a more serious risk be created. It is conduct that not only creates an unreasonable risk of bodily harm to another, but also involves a high degree of probability that substantial harm will result to such other person." *Id.* at 660.

The jury was told to consider all the evidence in making the threshold finding of whether the defendant was exceeding the speed limit. There was no presumption of fact created for it. The instruction that "any speed in excess of that limit would be negligent speed regardless of other conditions" has reference to other conditions causing that speed, but the jury considered all the evidence in determining the excess character of defendant's rate of travel.

Applying sec. 805.18, Stats., to the instruction, I would find that if there was an error, it did not affect the

substantial rights of the defendant and therefore was statutorily harmless.

Neither *Hart v. State* nor *State v. Cooper* found negligence to be an element of sec. 940.08, Stats., but rather negligence to a high degree. *Cooper* states at 117 Wis. 2d at 38:

> "This definition of a high degree of negligence has two elements: the standard definition of ordinary negligence, and the additional *element* of a high probability of death or great bodily harm. *Hart v. State,* 75 Wis. 2d 371, 383, 249 N.W.2d 810, 814–15 (1977)." (Emphasis added.)

This statement does not read that negligence is an element of the crime but rather the definition of ordinary negligence is a part of the definition of a high degree of negligence, not a separate and distinct element. It is stated more clearly in *Hart* on which *Cooper* relied at 75 Wis. 2d at 383, as follows:

> "Thus it is apparent that the statutory *definition* of a high degree of negligence consists of the standard definition of ordinary negligence with the additional element of 'a high probability of death or great bodily harm' as a result of the culpable act." (Emphasis added.)

It is clear in *Hart* that the definition of ordinary negligence is not an element of the offense.

In describing and attempting to clarify our harmless error rule, the majority states at varying parts of the decision:

(1) "Hence, when error is committed, a court *should be sure* that the error did not affect the result or had only a slight effect." At page 540. (Emphasis added.)

(2) "When it is clear that error has been committed, we *should be sure* that the error did not work an injustice." At pages 540, 541. (Emphasis added.)

(3) "The only reasonable test to assure this result is to hold that, where error is present, the reviewing court

must set aside the verdict unless *it is sure* that the error did not influence the jury or had such slight effect as to be *de minimus.*" Pages 541–542. (Emphasis added.)

(4) "[W]hether the trial error was harmless is unaffected by the particular formulation of the harmless error test used." Page 543.

(5) Finally, "whether there is a reasonable possibility that the error contributed to the conviction." Page 543.

Curiously, in the same paragraph at page 543 of the opinion, the court states: "The burden of proving no prejudice is on the beneficiary of the error, here the state" and cites *Billings,* 110 Wis. 2d at 667. Does that mean if there is any prejudice, then it cannot be harmless error? Are there not varying degrees of prejudice with some having a slight effect or no reasonable probability that the error which was prejudicial contributed to the conviction? If the error caused no prejudice, then why worry whether it was harmless?

The court honors *Strickland v. Washington,* 104 S. Ct. 2052 (1984), but for some insufficiently explained reason alters the *Strickland* test from "a reasonable probability" to "no reasonable possibility." Page 543. I would find *Strickland* persuasive not merely "instructive." Page 545. It apppears the majority will follow *Strickland* but is attempting to maintain state's rights by using "reasonable possibility" instead of "reasonable probability." Webster's Third New International Dictionary Unabridged cites possible as a synonym for probable and further states: "Probable applies to that which is supported by evidence that is adequate although not conclusive or by reason that it is worthy of belief or acceptance . . . ." "Possible refers to that which is within the limit of what may happen or of what a person or thing may do, although it may not seeem probable . . . ."

In a concurring opinion *State v. Poh,* 116 Wis. 2d 510, 533, 343 N.W.2d 108 (1984), I also discussed what I believe to be a needless distinction being made by the "reasonable possibility" and "probability" test. Whether they are interchangeable or not, I would prefer to use reasonable probability as relied on by the United States Supreme Court in *Strickland.*

Reasonable probability is a much better test than reasonable possibility. As is so often said by trial judges in making rulings "anything is possible" but "not everything is probable." Perhaps if a possibility is reasonable, it has risen to a higher level of acceptability. It would appear "reasonable possibility" of a different outcome, but for the error, is too vague and tenuous. It would be better as the Supreme Court did to state it in terms of "a reasonable probability" of a different outcome. Possibility gives too much latitude to a reviewing court. Perhaps the majority again is muddying the waters as it did in *Cartagena,* 99 Wis. 2d 657, 671; *Pohl,* 96 Wis. 2d 290, 311–12; *Novitzke,* 92 Wis. 2d 302, 308; *Kelly,* 75 Wis. 2d 313, 317 n. 3, by stating as it concedes at p. 543 of the opinion: "Often, we have concluded that the determination of whether the trial error was harmless *is unaffected* by the particular formulation of the harmless error test used." (Emphasis added.) Let us say it right this time and be consistent from now on by using the "reasonable probability test."

For the remainder of the decision, the majority uses "probability" as the test. Page 546.

For the final confusion, the court at p. 547 states a repeat of the test picked from previous cases for some unexplained reason as follows: "the judgment should be reversed unless *we can be sure* that the error did not contribute to the guilty verdict." (Emphasis added.) Thus the test is again stated differently than "reasonable possibility" or "probability."

The majority appears to be abandoning the test in *Wold v. State,* 57 Wis. 2d 344, 356, 204 N.W.2d 482 (1973):

"The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt."

This test applied to error of non-constitutional dimensions. Now, the court is focusing as the same author did in *Kelly v. State,* 75 Wis. 2d 303, 321, 249 N.W.2d 800 (1977) (concurring opinion) as follows: "The *Wold* rule gives no recourse against errors which may well have a substantial impact upon the jury's finding of guilt." Supposedly now the focus is on the error, not on the other evidence of guilt. However, by keeping in the language of *Novitzke v. State,* 92 Wis. 2d 302, 308, which relied on *Kelly* which stated the test was whether the error had only slight effect on the jury. The focus is not exclusively on the error. Slight effect of the error looks to the error but also as in *Wold* it looks to the effect it had on the jury when considering all of the other evidence received to convince the jury of guilt. Thus, though it appears *Wold* is no longer the test in non-constitutional error cases, one cannot be too sure since the test of slight effect is now present in both non-constitutional and constitutional error cases. Under the new test of reasonable possibilities (probabilities), all of the evidence must be looked at as in *Wold* to see what effect the error had on the total case. The ultimate test of *Strickland* and therefore in this case is whether there is confidence in the outcome. This requires examining the entire record and not exclusively the error.

What is the error of instruction in this case as applied to the total instructions to the jury? I will locate it for

the reader in its proper position in a total of 17 pages of instructions. I will recite only the relevant instructions as follows:

"You're the judge of the facts in this case. . . .

"Now, you will recall at the beginning of the trial I read an instruction that I felt was important to explain the burden of proof that you're going to have to consider. It might be getting monotonous for everybody to be mentioning to you beyond a reasonable doubt, but it might be the only time any of the jurors ever have to think about anything in their lives in those terms, and it's hard to put a quantitative value on a mental state and a mental state is your figuring out what beyond a reasonable doubt might be.

"So this is the best I can do as far as instructing you on what beyond a reasonable doubt means and what the burden of proof is and the presumption of innocence. In determining the guilt or innocence of the defendant, scrutinize the evidence with the utmost care and caution, use all the judgment, reason, prudence and discrimination that the 12 of you collectively possess. If after this careful scrutiny of all the evidence you have a reasonable doubt as to the defendant's guilt, you must find him not guilty. The law presumes that every person charged with the commission of an offense is innocent. And this presumption attends the defendant throughout the trial and continues or prevails at the close of the trial unless overcome by evidence that satisfies you, the 12 of you, of his guilt beyond a reasonable doubt.

"Now, the defendant is not required to prove he's innocent. The burden or obligation, duty of proving the defendant guilty of every element of the crime charged is upon the State, and before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty.

"If you can reconcile the evidence upon any reasonable theory or hypothesis consistent with the defendant's innocence, you should do so and find him not guilty.

"The term reasonable doubt means a doubt based upon reason and common sense. I told you at the beginning of the trial that it's a reason—it's a doubt for which you can give a reason. If one of the other jurors—you say, well, I have a reasonable doubt, one of the other jurors wants

to know what that is, I don't know. It's got to be a doubt for which you can give a reason. You have to be able to explain it, and it's not a hunch. It's not speculation. It arises from a very—or from a fair and a rational consideration of the evidence in the case or the lack of evidence in the case. It means a doubt that would cause a person of ordinary prudence to pause or hesitate when called upon to perform one of the most important acts in their own lives.

"Now, a reasonable doubt isn't one that ignores a reasonable interpretation of the evidence. It isn't one that arises from fear to return a verdict of guilty, and it's not a doubt that might arise in somebody's mind because they just don't want to make a decision in this case.

"Now, you are to give the defendant the benefit of every reasonable doubt if one does arise in your mind after careful consideration of all the evidence. But don't search for doubt. Your job is to search for the truth.

". . . .

"Now, you're instructed in weighing the evidence you may take into account matters of common knowledge and your own observations and your own experiences in the affairs of life.

"The weight of the evidence is not determined by which side has more witnesses. You may find the testimony of one witness is more credible than that of another or several other witnesses in determining the weight and credit you are to give to the testimony of any witness. In determining the weight and the credit, value, truthfulness or believeability (sic) that you are going to give to any witness that testifies, consider interest or lack of interest in the result of the trial, conduct, appearance and demeanor on the witness stand, bias or prejudice, if any was shown, the clearness or lack of clearness of the recollections of the witnesses, the opportunity they had to know or observe the facts to which they testified and the reasonableness of any particular witness's testimony taken in light of all the other credible evidence in the case, then give it the weight and credit you feel it is entitled to.

". . . .

"Homicide by negligent use of a vehicle as defined by the Criminal Code of the State of Wisconsin is committed

by one who causes the death of another human being by a high degree of negligence in the operation of a vehicle. And before the defendant may be found guilty of homicide by negligent use of a vehicle, the State must prove by evidence that satisfies you beyond a reasonable doubt that there were present the following three elements of the offense: First, that Eve King met her death because of injuries sustained in a collision involving a vehicle driven by the defendant; second, that at the time of the collision the defendant was operating said vehicle in a manner constituting a high degree of negligence; third, that there was a causal connection between the death of Eve King and the operation of the vehicle driven by the defendant in a manner constituting a high degree of negligence.

"The second element of homicide by negligent use of a vehicle requires that the defendant was operating the vehicle in a manner constituting a high degree of negligence at the time of the accident in which Eve King met her death.

"The criminal code provides a high degree of negligence is conduct which demonstrates ordinary negligence to a high degree consisting of an act which the person should realize creates a situation of unreasonable risk and high probability of death or great bodily harm to another person.

"Now, to give you a clearer idea of that constitutes a high degree of negligence, I will define for you, first, what is meant by ordinary negligence. This instruction says a high degree of negligence is ordinary negligence to a high degree, so you have to know what ordinary negligence it.

"Negligence has the same meaning as the phrase failure to exercise ordinary care. A person is negligent when he or she fails to exercise ordinary care. Ordinary care is the degree of care which the great mass of mankind ordinarily exercises under the same or similar circumstances. A person fails to exercise ordinary care when, without intending to do any wrong, he does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such an act or omission will subject the person or property of another to an unreasonable risk of injury or damage.

"In addition to this general definition of negligence, there are more specific rules of law which are applicable in this case.

"A driver must exercise ordinary care to keep his vehicle under proper management and control so that when danger appears, he may stop his vehicle, reduce his speed, change his course or take other proper means to avoid injury or damage. If a driver does not see or become aware of danger in time for him to take proper means to avoid the accident, he is not negligent as to management and control. It is the duty of every operator of a motor vehicle to exercise ordinary care to keep a careful lookout ahead and about him.

"The exercise of ordinary care requires him to make observations at a point or points where his observations will be efficient for protection from injury to person or property and requires the seasonable (sic) and efficient —seasonable (sic) and effective use of a driver's sense of sight to observe timely not only the presence, location and movement of other users of the highway, pedestrians as well as vehicles, such traffic signs and signals, highway markers, obstructions to vision and everything else that might warn him of possible danger. Under Wisconsin law, regulating speed of motor vehicles, it is provided that no person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing, and that the driver shall exercise ordinary care to so regulate his rate of speed as may be necessary to avoid colliding with any object, person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and using due care.

"The safety statute in the motor vehicle code provides that, no person shall drive a vehicle at a speed in excess, and on 14th Street in particular, of 30 miles per hour. *Any speed in excess of that limit would be negligent speed regardless of other conditions.* It is for you to determine whether Johrie Dyess's speed was over said limit, and if under, what it was, nevertheless, a negligent speed under the conditions and circumstances then present and under the rules of law given to you in these instructions.

"And there's a lot more to this, and I say, you will have a chance to read this. But the negligence which consti-

tutes a high degree of negligence and which is requisite for conviction of homicide by negligent use of a vehicle is conduct that not only creates an unreasonable risk of bodily harm to another but also involves a high degree of probability that substantial bodily harm will result to such other person.

"In other words, the danger of injury which characterizes ordinary negligence is magnified to a high degree.

"On the other hand, proof of a high degree of negligence does not require proof of reckless conduct which, under the criminal code, requires conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury.

"The third element of this offense requires that the relation of cause and effect exists between the death of Eve King and the driving by the defendant of the vehicle in a manner amounting to a high degree of negligence. You are instructed that a relation of cause and effect exists between such degree of negligence and the death of Eve King when such high degree of negligence was the cause of death. There may be more than one cause of death. The negligence of one person alone might produce it or the acts or omissions of two or more persons might jointly produce it.

"Before such relation of cause and effect can be found to exist, however, it must appear that the high degree of negligence under consideration was a substantial factor in producing death. That is to say that it was a factor actually operating and which had a substantial effect in producing the death as a natural result.

"If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant caused the death of Eve King by a high degree of negligence in the operation of a motor vehicle, then you should find the defendant guilty of homicide by negligent use of a motor vehicle as charged in the information.

"If, however, you are not so satisfied, then you must find the defendant not guilty." (Emphasis added.)

I would hold the instruction advising the jury if it finds from all the evidence that the defendant exceeded the speed limit, then the defendant was negligent is a correct statement of the law and did not create a pre-

sumption of ultimate elemental fact, and in the alternative, I would hold when taken in the context of all the instructions, it "had no effect on the result or had only a slight effect" or "did not work an injustice" or "the error did not influence the jury" or there is no reasonable possibility (probability) that the error contributed to the conviction or I'm "sure that the error did not contribute to the guilty verdict." Finally, I would find the error did not undermine confidence in the outcome of the case. Therefore, for any of the rationales stated, I would find the error found by the majority to have been harmless.

I dissent and would affirm the court of appeals.

I am authorized to state that Mr. JUSTICE LOUIS J. CECI joins this dissenting opinion.