STATE of Wisconsin, Plaintiff-Respondent,

v.

Lee A. WOFFORD, Defendant-Appellant.

Court of Appeals

*No. 95–0979–CR. Submitted on briefs October 9, 1995.—Decided May 16, 1996.*

(Also reported in 551 N.W.2d 46.)

For the defendant-appellant the cause was submitted on the brief of *John D. Lubarsky*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, with *Daniel J. O'Brien*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J.   Lee Wofford appeals from a judgment of conviction for armed robbery, § 943.32(1) and (2), STATS., and from an order denying postconviction relief. The issues are whether the trial court erroneously admitted the result of a polygraph examination given to Jonathan Rozelle, a witness, and, if not, whether Wofford's trial counsel provided ineffective assistance. The State contends the polygraph examination result was not admitted and the claim of ineffective assistance is meritless. We conclude the polygraph examination result was admitted, the admission was error, and the error was harmless. We reject Wofford's ineffectiveness of assistance claim. We affirm the judgment of conviction and the order denying postconviction relief.

The criminal complaint alleged that on February 24, 1992, Wofford and another man entered a McDon-

ald's restaurant in Beloit. Wofford was armed with a handgun. Wofford and his companion stole about $3,120 from the restaurant. Rozelle, a restaurant employee, was present when the robbery occurred, and he told a detective that he knew the robbers.

Detective Johnson later asked Rozelle to take a polygraph examination. During the examination Rozelle denied knowing the identities of the robbers, and the examiner concluded that Rozelle was not being truthful. After Rozelle was confronted with the polygraph results, he said he had recognized Wofford as one robber and Anthony Dumas as the other.

During the jury trial in June 1992, the court excluded all questions regarding Rozelle's polygraph examination. The court granted a mistrial when the jury reported it was hopelessly deadlocked.

At the second trial in October 1993, Rozelle identified Wofford as the gunman in the robbery. On cross-examination, Wofford's counsel asked Rozelle if he had been asked to take a polygraph examination. When Rozelle answered yes, the assistant district attorney said he thought the ruling in the first trial regarding the polygraph was still in effect but he would not object to the question "because the cat is out of the bag."

After the State rested, Wofford's counsel called detective Johnson. During Johnson's cross-examination, the following colloquy occurred between the assistant district attorney and detective Johnson:

> MR. WHITE: And you spoke to Jonathan Rozelle after he had a polygraph exam by Ms. Zarnicki (phon.) of the Beloit Police Department, correct?
>
> DET. JOHNSON: Yes.
>
> MR. WHITE: And it was determined after that polygraph exam that Mr. Rozelle did in fact know

exactly who robbed the McDonald's on Prairie Avenue, was it not?

DET. JOHNSON: That's correct.

MR. WHITE: And your answer was it was at that point in time it was clear he knew exactly who robbed McDonald's on February 24th, correct?

DET. JOHNSON: Yes, sir.

Wofford's counsel timely objected to the initial question and moved for a mistrial. The trial court overruled the objection and denied the motion for a mistrial, finding that Wofford himself had raised the polygraph issue.

The jury returned a guilty verdict. Wofford's appellate counsel filed a postconviction motion requesting a new trial. Appellate counsel argued that the court erroneously admitted the results of the polygraph examination given to Rozelle and, in the alternative, Wofford's trial counsel ineffectively assisted him.

Wofford's trial counsel testified at the postconviction hearing that he knew that the polygraph result was unfavorable to Wofford but because Rozelle's credibility was a critical issue, he believed it was proper to ask Rozelle whether he had been requested to submit to a polygraph, since the request reflected negatively on Rozelle's credibility. Counsel believed that even though he had raised the issue, the State was prohibited from putting the result of the examination in evidence.

The trial court denied Wofford's motion for postconviction relief. The court ruled that its order in the first trial excluding references to the polygraph was not in effect in the second trial, that the polygraph evidence admitted in the second trial was not the type of evidence precluded by *State v. Dean*, 103 Wis. 2d 228,

307 N.W.2d 628 (1981), and that if it was error to admit the polygraph evidence, the error was harmless. The court held that the polygraph evidence was relevant, and it was sound strategy for Wofford's counsel to ask Rozelle whether the police wanted him to take a polygraph examination.

The issue in *Dean* was whether polygraph evidence was admissible when Dean had entered a stipulation as required by *State v. Stanislawski*, 62 Wis. 2d 730, 216 N.W.2d 8 (1974), for taking a polygraph examination after he had been criminally charged but before he had counsel. The *Dean* court found "that the *Stanislawski* conditions are not operating satisfactorily to enhance the reliability of the polygraph evidence and to protect the integrity of the trial process as they were intended to do," and compromise standards between unconditional admission and unconditional rejection of polygraph evidence had not been developed to guide the trial courts. 103 Wis. 2d at 279, 307 N.W.2d at 653. This, the *Dean* court said, heightened its concern that the burden on a trial court to assess the reliability of stipulated polygraph evidence may outweigh any probative value the evidence may have. The *Dean* court held that it was error for a trial court to admit polygraph evidence in a criminal proceeding unless a *Stanislawski* stipulation was executed on or before September 1, 1981. *Id. Dean* stands "for a blanket exclusion of polygraph evidence in criminal proceedings on public policy grounds." *State v. Ramey*, 121 Wis. 2d 177, 180-81, 359 N.W.2d 402, 404-05 (Ct. App. 1984).

When it held that the evidence offered at Wofford's trial was not the type of evidence the *Dean* court had rejected, the trial court was, we believe, referring to the interpretation by the polygraph examiner who admin-

istered the test. *See Dean*, 103 Wis. 2d at 230-31, 307 N.W.2d at 629-30. At Wofford's trial, no one introduced the opinion or testimony of the polygraph examiner who interpreted the results of Rozelle's polygraph.

However, no reasonable juror would understand the detective's testimony to mean anything other than that the polygraph examination of Rozelle demonstrated that when the robbery happened Rozelle indeed had known exactly who the robbers were. Since Rozelle had testified on direct examination that Wofford was the gunman at McDonald's, the only reasonable inference the jurors could draw was that Rozelle passed the polygraph examination regarding his truthfulness when he identified Wofford as the gunman.

Thus, although the polygraph examiner did not testify at Wofford's trial, the results of the polygraph examination were put in evidence with as much certainty and forcefulness as if the examiner himself had testified to his interpretation of the results. We therefore reject the ruling that the evidence offered at Wofford's trial was not the type of evidence the *Dean* court excluded, and we reject the conclusion that the evidence that was received could not be considered to be the results of the polygraph examination.

A distinction nevertheless exists between an inquiry into the taking of a polygraph and an inquiry into the results of the polygraph examination. We recognized the distinction in *State v. Hoffman*, 106 Wis. 2d 185, 316 N.W.2d 143 (Ct. App. 1982). In *Hoffman*, we said

> Although a polygraph test result might itself be inadmissible, an offer to take a polygraph examina-

tion is relevant to an assessment of the offeror's credibility and may be admissible for that purpose. *Lhost v. State*, 85 Wis. 2d 620, 634 n.4, 271 N.W.2d 121, 128 (1978). By the same reasoning, a withdrawal of such an offer may also be probative of credibility for the reasons suggested by defendant.

*Hoffman*, 106 Wis. 2d at 217, 316 N.W.2d at 160 (footnote omitted).

■

Our holding in *Hoffman* has never been overruled, and we are generally bound by our own published precedent. *See State v. Solles*, 169 Wis. 2d 566, 570, 485 N.W.2d 457, 459 (Ct. App. 1992) (court of appeals believes itself bound by its published precedents). However, the facts before us differ from those in *Hoffman*. This case does not involve a mere offer to take a polygraph examination or the withdrawal of such an offer. This case involves a polygraph that was actually taken and its result. Wofford's jury heard, in substance, not only that a polygraph examination had been requested but that it had been taken and the result. Our decision in *Hoffman* does not justify putting the result of a polygraph examination in evidence.

■

We conclude the admission of the polygraph evidence was error, but the error was harmless.[1] The test

---

[1] The *Dean* court was concerned that polygraph evidence negatively affected the integrity of the trial process. *Dean*, 103 Wis. 2d at 229, 246, 248, 258, 266, 279, 307 N.W.2d at 629, 637, 638, 643, 646, 653. The parties do not discuss whether an error affecting the integrity of the trial process is amenable to harmless error analysis.

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988), addressed the problem at the federal level. The Court held that federal district courts could not exercise their supervisory pow-

for harmless error in this state is whether a reasonable possibility exists that the error contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231-32 (1985). The abundant evidence of Wofford's guilt satisfies us that no such reasonable possibility exists.

Three eyewitnesses to the armed robbery identified Wofford as one of the robbers and that he was armed. Rozelle was only one of the three. One of the other two witnesses had recently played football with Wofford and co-defendant Dumas. Moreover, Dumas had told his probation officer that Wofford was an accomplice in the robbery. While Rozelle had initially said he was afraid to name the robbers, even while he was being held captive with other employees he said he

---

ers to dismiss an indictment because of egregious prosecutorial misconduct unless such errors prejudiced the defendants. *Id*. at 254. The Court rejected that dismissal was necessary to safeguard the integrity of the judicial process notwithstanding the absence of prejudice to the defendants, a view expressed by a dissenting judge in the court of appeals which had heard the case. *Id*. at 253-54, *citing United States v. Kilpatrick*, 821 F.2d 1456, 1479-80 (10th Cir. 1987) (Seymour, J., dissenting). The Supreme Court concluded that dismissal without harmless error analysis would "circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a) [which] provides that 'any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.' " *Id*. at 254-55. Wisconsin has a similar rule. Section 805.18(2), STATS.

Because the parties have not briefed the issue under Wisconsin law, we do not reach it. *See State v. Harris*, 199 Wis. 2d 227, 267, 544 N.W.2d 545, 561 (1996) (Abrahamson, J., concurring) (whether harmless error analysis might differ under Wisconsin and federal constitutions not addressed because the issue was unbriefed).

knew who the robbers were but he would not name them. Rozelle identified the gun that Wofford used as the same gun Wofford had shown to Rozelle the day before the robbery. Dumas had asked Rozelle to buy bullets for the gun, and Dumas said he gave the same gun to Wofford to use in the robbery. Wofford had worked at the restaurant as recently as a month before the robbery, and he knew exactly where the safe was.

Wofford contends he was denied his constitutional right to effective assistance of counsel because his trial attorney elicited testimony that Rozelle took a polygraph exam. To prevail on this contention, Wofford must show both that his attorney's performance was deficient and that such performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The parties agree that harmless error analysis governs whether Wofford suffered prejudice through his attorney's bringing out that Rozelle took a polygraph. Because admission of the polygraph evidence was harmless error, we conclude that Wofford was not prejudiced by his attorney's performance.

*By the Court.*—Judgment and order affirmed.